Benjamin Brenner, J.
While the parties have on this motion to set the verdict aside dwelt upon the court’s query as to its excessiveness, there are several problems relative to the applicability of section 241-a of the Labor Law which deserve added comment.
The plaintiff, a worker employed by Westinghouse Electric Corporation, Elevator Division, which was installing an elevator during the construction of a building, had fallen 18 floors down the elevator shaft when he was drawn into it by a cable he was then lowering therein. (See 22 Misc 2d 51, affd. 13 A D 2d 539.)
*6 The defendants Joseph P. Elite, 3m, and Morninggide Heights Housing Corporation nave argued throughout trial that as the respective owner and general contractor they are not liable to this plaintiff under the statute which fastens liability absolutely and without regard to fault. If I. conceive their contention rightly, they say that even if the statute mandates a duty upon owners and general contractors not in control of the installations to provide safety planking in shafts, that duly is owed to workers other than those making the installation. Certainly, this provision of the Labor Law does render persons responsible for the construction of the building, though, not in control of the installation, liable to workers injured because of the absence of protective planking in the shaft. (Bobbey v. Turner Constr. Corp., 308 N. Y. 890; Duncan v. Twin Leasing Corp., 283 App. Div. 1080, motion for leave to appeal denied 283 App. Div. 1103.) But, say these defendants, the legislative intent was to place this burden on the shoulders of the installing contractor in control (in this instance Westinghouge) when the worker who is injured is then engaged in the very work of installing the facility. In other words, according to the defendants, this statutory safeguard for planking during the elevator installation was not intended to impose upon them a duty to protect workers actually installing the elevator,
I do not agree. The statute employs all-inclusive language. It reads: ” § 241-a. Protection of workmen in or at elevator shaftways, hatchways and stairwells — Any men working in or at elevator shaftways, hatchways and stairwells of buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening at levels not more than two stories above and not more than one story below such men, or by other means specified in the rules of the hoard.” If the Legislature intended to deny protection to workers installing the facility, it would have specifically excluded them. On the contrary, their inclusion is made plain; else why the term “ any men working ”? Surely, this cannot he construed to mean ” any workers except those employed during the installation, ” Nor is it logical to interpret the words ” in or at elevator shaftways” as applying to workers who happen to be near the ghaftway rather than those most apt to be at or inside of it, such as the plaintiff doing the installing work. Statutory language ought to he plainly read and its meaning not strained (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 232; Department of Welfare of City of N. Y. v. Siebel, 6 N Y 2d 536, 543; Meltzer v. Koenigsberg, 302 N. Y. 523, 525; Matter of Burch v. Hawkins, 9 A D 2d 6), nor should statutes *7 such as this, which are designed to broaden protection to workers, be so construed as to altogether destroy that protection (Koenig v. Patrick Constr. Corp., 298 N. Y. 313, 319; Quigley v. Thatcher, 207 N. Y. 66, 68; Vallina v. Wright & Kremers, Inc., 7 A D 2d 101; 3 Sutherland, Statutory Construction [3d ed.], p. 411, § 7204).
Yet the defendants imply that, ai construed by me and as applied to them, the provision is both illogical and unreasonable. They ask how may an owner and general contractor out of control so far anticipate and involve themselves in the work of elevator installation, as to constantly attend the installers in and about the shaft, placing and withdrawing protective planking as they move therein? In effect, they say this would he an impossible task which was meant to devolve upon the employer and undertaken by him alone. But the duty was made designedly broad to reach those who have over-all responsibility for the construction of a building in which a particular employment is extraordinarily hazardous, regardless of fault and despite lack of control. ¡Doubtless it is an onerons ditty hut it is imposed because of the exceptional dangers to “ any workers in and at shaftwayg, ’ ’ While that duty may not be delegated it could by contract language, much more clear and less equivocal than was employed in this instance, require indemnification by the employer for the latter’s breach of contract to provide the safeguards.
Nor is the statute unreasonably applied hire because, as defendants claim, compliance with its requirement was physically impossible (Giorlando v. Stuyvesant Town Corp., 4 A D 2d 701, motions for reargnment and leave to appeal denied 4 A D 2d 835). The jury, having been instructed on the subject, apparently found that the planking could he in place during the lowering of the cable.
It was also contended that plaintiff’s injuries were not causally and proximately related to the claimed violation. True, plaintiff would have fallen and presumably been injured even if there were compliance and the planking in place in the Shaft a floor below that from which he fell. And it is conceivable that he might have sustained equal or even greater injuries had he fallen hut 1 floor instead of 18 floors, considering the fortunate break in his fall. The jury was accordingly instructed that if plaintiff’s injuries were not in whole or part due to the absence of planking in the shaft where required, then he must be denied a recovery, (Ithaca Trust Co. v. Driscoll Bros. & Co., 220 N. Y. 617.) Implicit iu the verdict, therefore, must be a finding that bad the planking been in place in the shaft on the twentieth *8 instead of the third door, plaintiff would not have sustained all or part of his injuries.
The verdict is thus, oh all counts, fully justified. But the defendants claim that it is excessive! Plaintiff’s injuries were not minor, but neither were they grave. Despite his horrendous experience, his long fall, while fully conscious, was broken during the descent when he became entangled in the cable, which was the miracle that preserved his life. Essentially, his injuries were to the soft tissue and consisted of deep lacerations and muscle damage requiring much stitching. He was hospitalized three weeks and given clinical and medical attention on many occasions thereafter, in the meantime returning to the same electrical work in shaftways about two months following his fall. His total money losses came to somewhat better than $2,000. Unquestionably the greater part of the jury’s award of $20,000 was based on plaintiff’s shocking experience. It is excessive because little, if any, of the claimed injuries are attributable to the frightful fall. He is, of course, entitled to compensation for shock and fright (Jones v. Brooklyn Hgts. R. R. Co., 23 App. Div. 141; O’Flaherty v. Nassau Elec. R. R. Co., 34 App. Div. 74, affd. 165 N. Y. 624) even if there were no physical contact (Battalla v. State of New York, 10 N Y 2d 237) yet, liis miraculous escape, coming through as he did with all bones intact and almost all his skin, obviously affected his nervous system but slightly for he was back working in deep shafts two months later though he could perform his electrical work elsewhere at equal pay. So, while compensation for fright is quite understandable, it must be commensurate with the injury, pain and suffering attending it. The shock to the conscience of the court, which the verdict represents, is quite real though obviously nowhere near the dimensions of the shock which plaintiff’s nervous system underwent when he fell 18 stories. The verdict must, consequently, be reduced.
The motion to set it aside is granted and a new trial fixed for June 11,1962, unless plaintiff consents to entry of judgment for $12,500.