DANIEL HORAN, as Father and Natural Guardian of THOMAS HORAN, et al., Respondents, *v.* DORMITORY AUTHORITY, Appellant.

Third Department, November 29, 1973.

66

*Donohue, Bohl, Clayton & Komar* (*Paul D. Donohue* of counsel), for appellant.

*Rosenstock & Turner* (*James S. Carter* of *Carter, Conboy, Bardwell & Case* of counsel), for respondents.

STALEY, JR., J. This is an appeal from a judgment of the Supreme Court, entered October 17, 1972 in Albany County, upon a directed verdict in favor of plaintiffs on the issue of defendant's liability, and a jury verdict awarding damages to them.

On August 21, 1967 Thomas Horan was working as a laborer on the construction of a dormitory for Siena College in Loudonville, New York. He was a second year college student, and was employed for the summer by the general contractor which had been engaged by defendant to construct the dormitory building. On August 21, 1967 Horan fell through a stairwell, skylight or hatchway in the roof of the four-story building to the

concrete basement, four floors below. There were no witnesses who actually saw Horan fall through the hole, but Maxford Palmer was working with Horan on the day in question. They were working on the roof "picking up the loose stuff that was laying around, getting it ready for the roofer to do the work, scraps of wood, pieces of block, pieces of brick, whatever was there."

At the time of the accident, Palmer was some 50 feet from Horan with his back turned to him. Palmer heard screams from below and walked to the place where Horan had been standing. He saw the hole and a piece of plywood, approximately four feet square. Palmer stated that he had seen the opening before, and that there was never to his knowledge any barricade or banister around it, or a cover over it.

Robert Pistana, another coworker, testified that at the moment of the accident he was stepping from the roof onto the scaffolding to continue working with the bricklayers when he heard a yell. He stated that he saw Horan bend over and pick up a fairly large piece of plywood, and saw the top of his body as he fell through the hole. Pistana stated that the piece of plywood had covered the hole, and that there was no sign or marking indicating that the wood covered a hole. He said that he had thought that the cover was just another piece of plywood lying on the roof. He described the plywood piece as fairly good size, three by four feet, probably three-quarters of an inch thick.

Defendant raises three issues on appeal: (1) sections 200, 241 and 241-a of the Labor Law do not apply to the owner, Dormitory Authority; (2) there was no violation of either the Labor Law or the Industrial Code, and the plaintiff's complaint should be dismissed; and (3) the verdicts of the jury were excessive as a matter of law and fact.

The trial court based its direction of the verdict against the respondent solely upon the alleged violation of the provisions of section 241-a of the Labor Law. Therefore, the disposition of the first issue raised by defendant rests on whether section 241-a applies to it under the circumstances, and whether there was a violation of the section.

Section 241-a of the Labor Law provides as follows:

" § 241-a. Protection of workmen in or at elevator shaftways, hatchways and stairwells.

" Any men working in or at elevator shaftways, hatchways and stairwells of buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening at levels not more than two stories

above and not more than one story below such men, or by other means specified in the rules of the board."

Section 241-a requires that stairwells in buildings under construction be protected by a cover of "sound" planking laid across the opening at levels "not more than one story below" where men are working, which section has been strictly construed applying to owners of the building as well as contractors. (*Koploff* v. *St. Vincent Ferrer Church,* 39 A D 2d 581, app. dsmd. 30 N Y 2d 949; *Haskins* v. *City of New York,* 28 A D 2d 656; *Vassiliades* v. *Blitz,* 36 Misc 2d 5.) Further, contributory negligence is not a defense where a violation of this section is involved. (*Koploff* v. *St. Vincent Ferrer Church, supra.*)

It is undisputed that defendant failed to provide a sound planking covering at any level below the roof area where the infant plaintiff was working and, as a result, he was caused to fall four stories uninterrupted to the ground below. In *Joyce* v. *Rumsey Realty Corp.* (17 N Y 2d 118), a contractor was held to be liable under subdivision 1 of former section 241 of the Labor Law. The court found the duty imposed by the statute to be "a flat and unvarying" one and "conclusive evidence of negligence" calling for a directed verdict. In the case of *Haskins* v. *City of New York* (*supra*), the action, based on section 241-a, was against the owner of the premises in which the accident occurred, and the Appellate Division directed a verdict in favor of plaintiff on the issue of liability.

The court stated (p. 657): "Section 241-a employs broad and all-inclusive language. Clearly designed to broaden the cloak of protection to all workers engaged in hazards of work near stairwells, it affects all those having the over-all responsibility for the demolition of a building. In this case, the city. While section 240 of the Labor Law may not apply to an owner who engages an independent contractor to perform the work, section 241 does impose a nondelegable duty on owners, making them liable for its violation even though the work is being performed by an independent contractor. * * * The purpose of section 241-a being similar to that of section 241, the sections should be read *in pari materia.* Therefore, we conclude that section 241-a casts a nondelegable duty upon the city (the owner of the building) ".

Defendant also argues that subdivision (d) of section 23.11 [since repealed] of the Industrial Code requiring that "to minimize injuries from falls, a tight wooden platform of two inch planks, three-quarters inch plywood or equivalent, or a life net shall be installed not more than one story below the

level where the men are working '', was complied with. The mere placing of an unsecured and unmarked piece of plywood over a hole is by no means a tight covering. A plywood covering should be secured to prevent someone from inadvertently picking it up or to keep it from sliding or blowing away. (Cf. *Skibicki* v. *Diesel Constr. Co.*, 56 Misc 2d 955, affd. 29 A D 2d 1050.) No such precaution was taken here and it cannot be argued that defendant complied with either the specific requirements or general intent of the Industrial Code. In addition, it is questionable whether or not the plywood covering on the roof met the requirements of the code. The only testimony relative to the description of the plywood piece is Pistana's testimony that it was three by four feet, probably three-quarters of an inch thick. The rule of the board requires '' three-quarters plywood or equivalent '' and we submit that the evidence does not prove that such was met.

In the case of *Gorman* v. *Grand Central Bldg.* (29 A D 2d 849, affd. 22 N Y 2d 821), it was undisputed that the shaftway at the 30th floor was covered by planking at least two inches thick and, therefore, section 241-a had been complied with.

Defendant places great reliance on the case of *Bidetto* v. *New York City Housing Auth.* (25 N Y 2d 848), for the proposition that an owner is liable for a lack of compliance with sections 200 and 241 of the Labor Law, only if the owner has direction and control of the work and/or the injury occurred in '' an area of common usage in the construction over which the owner retained control.'' As previously stated, the trial court based its decision in this case on a violation of section 241-a of the Labor Law which was not involved in any way in the *Bidetto* case where the injured party was working as a brick layer and was injured by falling bricks from the floor above where he was working placed there by his employer the contractor.

Defendant further contends that the verdicts for the infant plaintiff in the sum of $350,000 and for his father in the sum of $15,000 were excessive. The infant plaintiff suffered severe injuries including a fractured skull, cerebral concussion and contusion of the brain with permanent brain damage and, in addition, diabetes insipidus, a glandular disease. There is ample evidence in the record to establish that had the accident not occurred, Thomas Horan would have successfully completed his studies at Albany College of Pharmacy and become a pharmacist earning something in excess of $10,000 per year immediately after graduation. The record also shows that after the accident he may never have the mental or physical capability

to work at all. A loss of earnings of $10,000 per year for 50 years would total $500,000 in itself, with no consideration at all of medical expenses, pain and suffering, or humiliation. Plaintiff had the intelligence and opportunity to complete pharmacy school and to pursue a career as a pharmacist. Therefore, a verdict of $350,000 to compensate him for a loss of potential earnings, pain and suffering, is not excessive.

As for Daniel Horan, the verdict of $15,000 is clearly excessive. Medical expenses incurred during the period of Thomas' minority were slightly in excess of $5,000, so the verdict included nearly $10,000 for loss of services. The accident occurred on August 21, 1967, and Thomas became 21 in November, 1968. A verdict of $7,500 would be adequate.

The judgment, in respect to the derivative cause of action only, should be reversed, on the law and the facts, and a new trial of said derivative cause of action ordered unless, within 20 days after entry of order hereon, plaintiff Daniel Horan shall stipulate to reduce the amount of the verdict in his favor to $7,500, in which event the judgment upon said derivative cause of action, as so reduced, affirmed; and judgment in all other respects affirmed, with costs.

REYNOLDS, J. (dissenting). We cannot agree with the majority's position that section 241-a of the Labor Law cast on defendant, as owner of the building, an absolute and nondelegable duty to see that the section is complied with. It is well settled that an owner is liable for a lack of compliance with section 241 of the Labor Law *only if he exerts direction and control of the work or the incident occurred in " an area of common usage in the construction over which the owner retained control."* (*Bidetto* v. *New York City Housing Auth.*, 25 N Y 2d 848, 849 and cases cited therein; emphasis supplied). It is also clear that section 241-a, here involved, must be read *in pari materia* with section 241. (Section 241-a standing alone does not specify as to whom it shall apply or against whom it shall be enforced.) Since there is no indication of control or direction or involvement of an area of common usage over which the owner retained control, section 241-a does not cast liability on the instant appellant. The majority's reliance on *Haskins* v. *City of New York* (28 A D 2d 656) is misplaced. *Haskins* incorrectly held that section 241-a casts a nondelegable duty because section 241 casts such a duty. It is clear from the Court of Appeals cases decided before and since *Haskins* that section 241 casts no such duty as to an owner out of control (e.g., *Bidetto* v. *New York City*

*Housing Auth., supra;* cf. *Wright* v. *Belt Assoc.,* 14 N Y 2d 129; *Naso* v. *Wates & Co.,* 21 A D 2d 679, affd. 15 N Y 2d 667). Our court has dealt with section 241 in accordance with these Court of Appeals holdings in *Curtis* v. *State of New York* (27 A D 2d 628, affd. 23 N Y 2d 976) and *Leahy* v. *Botnick* (35 A D 2d 898). It is our opinion that *Haskins* has been overruled by the Court of Appeals cases. To hold, as the majority would, that a non-controlling owner would not here be liable under section 241 but would under section 241-a has no logical consistency and could clearly not have been the intent of the Legislature, as witness the Court of Appeals cases.

The cases cited by plaintiff and adopted by the majority either involved a general contractor and not an owner who did not retain control, or miscellaneous decisions contra to the rationale of the Court of Appeals cases. It will be seen that no Court of Appeals decision has been cited which sustains the position of plaintiff.

The attempt to distinguish *Bidetto* (*supra*) in the majority statement seems to be merely a restatement that section 241-a of the Labor Law can be considered without reference to section 241 and ignores the clear holding of *Bidetto* and the cases cited therein, that in order to charge an owner the owner must have direction and control of the work and/or it must have occurred in an "area of common usage in the construction *over which the owner retained control.*" (Emphasis supplied.)

While we feel it unnecessary to reach the question of compliance with the statutes and rules enacted thereunder, some brief clarification of the facts would seem indicated. Also, a brief discussion of the plaintiff's contentions would be in order. It seems to us that respondent's photographs are misleading. The evidence shows that there was no hole on the roof which would approximate a stairwell. Rather it was an aperture of very small size amply covered by a three-foot by four-foot, or four-foot by four-foot piece of three-quarter inch plywood, which hole it is contended was left to accommodate a permanent roof vent for fumes; that it was a part of the work in progress. There is considerable doubt that this is a case where a man was working in or at a stairwell but, in any event, the hole was covered in compliance with section 241-a and subdivision (d) of section 23.11 [since repealed] of the Industrial Code by a three-quarter inch solid piece of plywood in accordance with subdivision (d) of section 23.11. The contention that there must be coverings at the floor below, etc., was disapproved in *Gorman* v. *Grand Cent. Bldg.* (29 A D 2d 849, affd. 22 N Y 2d 821) *as long as the*

*hole was covered.* Respondent's claim that a barricade or banister should have been erected is easily disposed of. This is necessary only where there is an open hole (this was covered) and where it does not concern work in progress, as here.

The attempt to question the testimony as to the size and width of the plywood covering over the aperture in the roof is rather puzzling since it was testified to by the plaintiff's own witness and was undisputed and was in exact compliance with subdivision (d) of section 23.11. The contention of plaintiff that the plywood covering had to be secured has absolutely no substantiation in the statute or rule. The contention that it might slide or blow away as stated in the majority opinion could be classified as a desperation argument, or at the least not relevant. Suffice it to say that it was firmly over the hole at the time of the accident, had not slid or blown away, and was moved by the plaintiff who had previously seen the hole at that point.

It seems reasonable that the general contractor in control, constantly on the job at all times, can best enforce sections 241 and 241-a for the safety of the workmen and the Court of Appeals cases which require direction and control and exonerate the owner out of control make good sense. It would seem that the respondent's accident was caused by negligence or inadequate instructions given by his employer when he was sent to ''pick up'' on the roof. This accident occurred because of the manner in which plaintiff was performing a detail of the general contractor's work.

The judgment should be reversed and the complaint dismissed.

HERLIHY, P. J., and GREENBLOTT, J., concur with STALEY, JR., J.; KANE and REYNOLDS, JJ., dissent and vote to reverse in an opinion by REYNOLDS, J.

Judgment, in respect to the derivative cause of action only, reversed, on the law and the facts, and a new trial of said derivative cause of action ordered unless, within 20 days after entry of order hereon, plaintiff Daniel Horan shall stipulate to reduce the amount of the verdict in his favor to $7,500, in which event the judgment upon said derivative cause of action, as so reduced, affirmed; judgment in all other respects affirmed, with costs.