MAUREEN A. TILKINS, as Administratrix of the Estate of DONALD E. TILKINS, Deceased, Respondent, v CITY OF NIAGARA FALLS, Appellant and Third-Party Plaintiff-Respondent.

GROSS PLUMBING & HEATING CO., INC., Third-Party Defendant-Appellant.

Fourth Department, May 28, 1976

*Carl E. Mooradian*, Corporation Counsel (*George M. Donohue* of counsel), for appellant and third-party plaintiff-respondent.

*Boniello, Gellman, Anton, Brydges & Conti* (*Salem Mansour* of counsel), for respondent.

*Dixon, DeMarie & Szymoniak* (*Anthony DeMarie* of counsel) and *Murphy & Vitch* (*Robert Viola* of counsel), for third-party defendant-appellant.

SIMONS, J. Plaintiff's intestate was killed on August 23,

1971 when an earthen trench in which he was working collapsed and buried him. The work was being performed by his employer, third-party defendant Gross Plumbing & Heating Co., Inc., pursuant to a contract with defendant third-party plaintiff City of Niagara Falls, which called for the installation of water and sewer lines on platted but undeveloped city streets. It was plaintiff's contention that the work was performed without proper safety precautions in violation of section 200 and subdivision 6 of section 241 of the Labor Law and subdivision (b) of rule 23.8 of the Industrial Code (12 NYCRR 23.8 [b]). The jury awarded plaintiff $240,000 damages for the wrongful death of the decedent and determined that the city was entitled to a 50% contribution from the third-party defendant. The court denied the city's claim for contractual indemnification from Gross for the 50% of the verdict which it was called upon to pay.

At issue is the determination of who is ultimately responsible for damages resulting from injury or death to a workman under section 200 and subdivision 6 of section 241 of the Labor Law. The trial court took the view that liability under section 200 could be imposed only if the city had control of the site but that subdivision 6 of section 241 imposed liability upon the city as owner of this property, lack of control over the work site or the occurrence notwithstanding.

It is established law that section 200 of the Labor Law imposes a duty on owners to provide a contractor's employees with a safe place to work. The duty requires the owner to prevent injuries to workmen arising from defects in the common ways or areas of the work of which the owner has notice. He is not obliged to supervise the contractor for the benefit of the employees nor does his obligation extend to protecting the employees from defects in the contractor's plant, tools and methods (*Ortiz v Uhl,* 39 AD2d 143, affd 33 NY2d 989; *Gasper v Ford Motor Co.,* 13 NY2d 104; *Zucchelli v City Constr. Co.,* 4 NY2d 52). The statute is declaratory of the common law and requires the exercise of reasonable care, a duty which is general in character and not absolute (see *Dittiger v Isal Realty Corp.,* 264 App Div 279, 281-282, revd on other grounds 290 NY 492; cf *Koenig v Patrick Constr. Corp.,* 298 NY 313).

By way of contrast, over the years section 241 of the Labor Law has undergone a series of amendments and its interpretation is open to some dispute. The most recent amendment in 1969 gives rise to two questions upon this appeal, does subdivi-

sion 6 of section 241 of the Labor Law apply (1) to work, such as this, which is not performed in conjunction with the construction or demolition of buildings, and (2) to an owner who is not exercising control or supervision over the work site? Presently, subdivision 6 of section 241 provides as follows:

"[a]ll contractors and owners and their agents, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: * * *

"6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The board may make rules to carry into effect provisions of this subdivision, and the owners and contractors and their agents for such work shall comply therewith" (as amd by L 1969, ch 1108, § 3).

An examination of the history of this legislation reveals that prior to 1962 section 241 was essentially similar to the present statute, although it contained no subdivision 6 referring to shoring. However, in 1962 the section was repealed and a new section was adopted which closely paralleled the present subdivision 6.[1] In 1969 the then existing section 241 was repealed and the present section enacted which revived the pre-1962 version but added the present subdivision 6.

The language and form of the statute would seem clear evidence of its limitation to building sites and counsel for the city relies upon the legislative memorandum which supports that interpretation.[2] Paradoxically, the history of the section suggests otherwise.

First of all, the 1962 amendment to section 241 was not

1. "All areas, buildings, or structures in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted by the owners, contractors, and subcontractors as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such place. The board may make rules to carry into effect the provisions of this section." (L 1962, ch 450, § 3.)

2. "This bill places ultimate responsibility for safety practices at *building* construction jobs where such responsibility actually belongs, on the owner and general contractor." (Emphasis added; NY Legis Ann, 1969, p 407.)

restricted to excavation in connection with a building, but applied to "*all* areas, buildings, or structures" (emphasis added). This language of the former statute was apparently transferred *in toto* into subdivision 6 of the present section which refers to "all areas" in which excavation work is being performed and a note to chapter 1108 of the Laws of 1969 is evidence of the legislative intent to preserve the scope of the original 1962 statute. Furthermore, if the provisions of subdivision 6 are limited to building sites, the language is at odds with the remaining subdivisions of the statute, i.e., subdivision 8 of section 241 also refers to "all areas, buildings or structures" in reference to safety precautions for passersby, and, if subdivision 6 of section 241 is restricted to excavations in conjunction with buildings, subdivision 7 of section 241 becomes redundant, since that subdivision authorizes the enactment of "rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures". Finally, nothing in the legislative memorandum accompanying the 1969 amendment to section 241 reveals any intention by the drafters to restrict its application to work in connection with buildings (see (NY Legis Ann, 1969, p 407; also reproduced in *Rocha v State of New York,* 77 Misc 2d 290, 296-297). Despite the apparently unambiguous language of the first paragraph, it is manifest that the Legislature did not intend the statute to be so limited and the trial court properly determined that subdivision 6 of section 241 applied in this action.

Turning to the issue of control, the trial court took the view that the city may be liable for injuries caused by the negligent acts of contractors under amended subdivision 6 of section 241 irrespective of whether it, as the owner, exercised control or supervision of the work site.

There is a measure of logic in this view because to condition plaintiff's recovery from the city upon its control of the site defeats the statutory purpose of promoting safety for the workman. If control is required before liability results and plaintiff is unable to establish control by the owner, she has no recourse for her damages except her remedy under the Workmen's Compensation Law. Conversely, permitting recovery against the city even though it may have exercised no control over the work, encourages the statutory aim of acci-

dent prevention[3] and the city, in turn, is made whole by its action over against the contractor on a fault-sharing basis under the contribution principles of *Dole v Dow Chem. Co.* (30 NY2d 143).[4]

Nevertheless, the law, as it relates to accidents prior to 1969 is clear; an owner may not be liable for accidents resulting from the manner in which the employer prosecuted the work unless the owner directed or controlled the work or the incident occurred in an area of common usage in the construction over which the owner retained control (see *Iuliani v Great Neck Sewer Dist.*, 38 NY2d 885; *Tallarico v Long Is. Light. Co.*, 45 AD2d 845, affd 38 NY2d 733; *Bidetto v New York City Housing Auth.*, 25 NY2d 848; *Persichilli v Triborough Bridge & Tunnel Auth.*, 16 NY2d 136; *Wright v Belt Assoc., supra; Petrassi v Estate of Peter A. H. Jackson, Inc.*, 50 AD2d 768; see, generally, 1 NY PJI2d 484-502), and we find nothing in the amendment of the statute which affects the vitality of these decisions when applied to accidents occurring after 1969. Indeed, this court has previously held that liability may not be imposed on an owner under present subdivision 6 of section 241 of the Labor Law in the absence of control *(Caligiuri v Open House Motel*, 42 AD2d 1050)[5] and the Second Department has ruled similarly *(Scavone v State Univ. Constr. Fund*, 46 AD2d 895; but see, *Myers v Cornell Univ.*, 46 AD2d 839 [3d Dept.] contra)[6].

**3.** It also encourages interference, one of the criticisms of a rule which spreads responsibility between owners, contractors and subcontractors (see *Wright v Belt Assoc.*, 14 NY2d 129, 136).

**4.** As has been noted elsewhere, the statutory purpose may be frustrated and liability may be shifted by permitting indemnity to the city for its own negligence either by insurance or express agreements (see *Kelly v Diesel Constr., Div. of Carl A. Morse, Inc.*, 35 NY2d 1, 7).

**5.** The trial court decision was affirmed without opinion. The action involved an owner out of possession pursuant to a 50-year lease.

**6.** In *Myers v Cornell Univ. (supra)*, a case involving similar facts, the Third Department held the violation of section 241 of the Labor Law imposed a nondelegable duty on the owner even in the absence of its control or direction of the work. The authority cited for this ruling was two prior decisions in the Third Department, *Matter of Rocha v State of New York* (45 AD2d 633, mot for lv to app den 36 NY2d 642, see p 310, *supra)*, which in turn relied upon *Horan v Dormitory Auth* (43 AD2d 65). *Rocha* was a "scaffolding" case decided upon an interpretation of section 240 of the Labor Law, and *Horan* was a "shaftway" case involving section 241-a of the Labor Law. In both cases the court, finding in the 1969 amendments a legislative desire for conformity in article 10 of the Labor Law, determined there were nondelegable duties under these sections because section 241 imposed a similar nondelegable duty. It appears that the cases were decided upon a mistaken premise for to say that section

*(n. contd.)*

The language of the pre-1962 statute, the 1962 amendment and the 1969 amendment of section 241 consistently has referred to the liability of "owners". Yet, under the prior statutes the courts have not held owners liable in the absence of control. Inasmuch as the language referring to the persons affected by the statute is the same in each instance, the court's rulings should be the same, absent a clear expression of the Legislature's intention to change the judicial interpretation of it.

This construction work was being performed by Gross' employees. The only city employee assigned to the job was Mr. Zeifang, a city inspector, and at the time of the accident he was not present. In any event, Mr. Zeifang's responsibility was not to oversee safety precautions, but to see that the city got the work it bargained for from the contractor. Standing alone, proof of his presence does not establish the requisite control of the work on the part of the city to support liability *(Broderick v Cauldwell-Wingate Co.,* 301 NY 182; *Leahy v Botnick,* 35 AD2d 898). There is some evidence, however, that the city did reserve the authority to stop the work or order corrections if the work became unsafe and that its inspectors had done so on other jobs (cf *Smullen v City of New York,* 28 NY2d 66). Inasmuch as the issue of control was not properly submitted to the jury to consider this evidence, we grant a new trial.

In summary, the city may be cast in liability to this plaintiff if it exercised control over the premises and if it violated the provisions of sections 200 and 241 of the Labor Law (even though the work was unassociated with building construction or demolition), or rule 23 of the Industrial Code (12 NYCRR Part 23). The city's liability is not absolute but based upon negligence, and the violation of the statutes or rule 23 implementing the statute constitutes evidence of negligence *(Conte v Large Scale Development Co.,* 10 NY2d 20, 29; and see *Corbett v Brown,* 32 AD2d 27, 30-32).

The city also appeals from the trial court's decision denying it indemnity. It is the city's claim that Gross is liable to it for the entire amount of the judgment under the rule that a

---

241 imposes a nondelegable duty begs the question. The duty may be nondelegable under section 241, but no duty exists unless the owner exerts direction and control over the work or the incident occurred in "an area of common usage over which the owner retained control" *(Iuliani v Great Neck Sewer Dist., supra; Bidetto v New York City Housing Auth., supra;* see, also, dissent of REYNOLDS, J., in *Horan v Dormitory Auth., supra,* pp 70-71).

party held vicariously liable for the acts of another may obtain contribution or indemnity from a party partly or wholly responsible for the accident *(Kelly v Diesel Constr., Div. of Carl A. Morse, Inc.,* 35 NY2d 1). The contract between the city and Gross contained a provision which stated essentially that Gross would indemnify the city from liability "arising from and through the negligence" of Gross or its agents or employees. While this clause appears to limit Gross' agreement to indemnify, the contract further provided that any judgment obtained against the city arising out of the conduct or prosecution of said work was "conclusive evidence" of the liability of Gross to the city. While contracts to indemnify a party against his own negligent acts bear close scrutiny *(Levine v Shell Oil Co.,* 28 NY2d 205), this language is all-inclusive and the city was entitled to be indemnified by Gross under the contract (see *Margolin v New York Life Ins. Co.,* 32 NY2d 149, 153; *Allman v Siegfried Constr. Co.,* 49 AD2d 357).

The judgment and order should be reversed and a new trial granted.

MARSH, P. J., CARDAMONE, MAHONEY and GOLDMAN, JJ., concur.

Judgment and order unanimously reversed on the law and facts without costs and a new trial granted.