OPINION OF THE COURT
David O. Boehm, J.
Among the issues presented by this case is the interesting *368 and, apparently, novel question of whether a worker who falls upon, rather than from, a device used as a scaffold comes within the protection of subdivision (1) of section 240 of the Labor Law.
On November 19, 1982, plaintiff, Joseph Aruck, was injured while working as a laborer for John B. Pike & Son, Inc., general contractor for the construction of an addition to a building owned by defendant, Xerox Corporation (Xerox). At the time of his injury plaintiff was standing on the platform of a mobile scissors scaffold or power lift, which he had extended to its full height of approximately 20 to 25 feet. Plaintiff was in the process of moving masonry blocks he had previously loaded on the platform to a fixed scaffold from which masons were constructing a wall. As plaintiff was holding two of the blocks the mobile scaffold swayed causing him to lose his balance and fall on the platform.
Plaintiff commenced this action against Xerox claiming violations of the Labor Law, and now moves for partial summary judgment establishing liability under subdivisions (1) and (3) of Labor Law § 240.*
Labor Law § 240 (1) provides: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
In opposition to plaintiffs’ motion defendant argues that a question of fact exists regarding whether the mobile scissors scaffold or power lift is a scaffold under section 240 (1). Defendant contends that the device is not a scaffold because it is not a temporary structure which is dismantled after use, and further that it was only used to bring materials to the masons and not to hold workers and the materials used by them to actually construct the building.
*369 A scaffold has been defined as "[a] temporary elevated working platform” (12 NYCRR 23-1.4 [b] [45]) or " 'a temporary structure of timber, boards, etc., for various purposes, as for supporting workmen and materials in building’ ” (Caddy v Interborough R. T. Co., 145 NY 415, 422, quoting Webster’s International Dictionary).
Although defendant is correct as to the temporary nature of a scaffold, the word "temporary” appears to mean relative to the structure under construction, not whether the device is dismantled as opposed to simply moved away. Furthermore, the significance of the word "temporary” in defining scaffolding under section 240 (1) has been greatly diminished, since the old rule "that anything which constituted a part of the work itself could not at the same time constitute a scaffold within section 240 (see Broderick v Cauldwell-Wingate Co., 301 NY 182, 187), appears to have given way to the extent that the work itself may now become part of the place to work and may fall within the statute” (Kennedy v McKay, 86 AD2d 597, 598; see, also, Lagzdins v United Welfare Fund — Security Div. Marriott Corp., 77 AD2d 585, 588 [section 240 (1) held applicable where braced trusses, which constituted part of the building itself, were used as a place to work]). Therefore, it is irrelevant for purposes of liability under section 240 (1) whether the device used as a work platform is dismantled after use or not (see, Vicenty v Davis, 43 AD2d 534 [section 240 (1) held applicable where worker was directed to stand on a freezer to perform work]).
Neither does the fact that the mobile scaffold was not used by the workers engaged in the actual construction of the building but only as a means to supply such workers with the materials required for such construction preclude liability under section 240 (1). It is sufficient that the work activity involved merely relates to the construction (see, Struble v John Arborio, Inc., 74 AD2d 55 [injury resulted while dismantling crane some distance from site of immediate construction]; Ploof v B.I.M. Truck Serv., 53 AD2d 750, lv denied 40 NY2d 803 [injury resulted while unloading pallets three fourths of the way up the slope to the bridge construction]). Certainly plaintiff’s use of the scaffold to supply materials to the masons is sufficiently connected to the actual erection of the structure to come under section 240 (1).
Relying on a number of decisions by the Appellate Division, Fourth Department, defendant also contends that section 240 *370 (1) is inapplicable because plaintiff did not fall off the platform but, rather, on it.
It is undisputed that the mobile scaffold had a tendency to sway, that plaintiff’s fall was caused by a sudden sway of the. scaffold, and that plaintiff’s injuries resulted from the fall. Thus, the question here, apparently one of first impression, is whether the fact that plaintiff fortuitously fell on the scaffold platform, rather than from it, defeats a claim based on section 240 (1).
The Appellate Division for this Department has consistently held that section 240 (1) is addressed to "situations in which a worker is exposed to the risk of falling from, or being hit by, an object falling from an elevated worksite” (Fox v Jenny Eng’g Corp., 122 AD2d 532, affd 70 NY2d 761). Accordingly, the statute was held inapplicable where a worker was hit by a rock falling from the ceiling of a tunnel under construction, while standing 12 inches above the tunnel floor on the platform of a tunnel-boring machine (Fox v Jenny Eng’g Corp., supra). Similarly, the court found the statute inapplicable where a worker drove a vehicle off the shoulder of a road under construction, stating that the highway contour "cannot be equated with an elevated work platform or structure within the contemplation of the statute” (Siragusa v State of New York, 117 AD2d 986, 987, lv denied 68 NY2d 602). In Nagel v Metzger (103 AD2d 1) a section 240 (1) claim was dismissed where the worker was struck by a tree trunk suspended from a crane while he was standing on the ground. In so holding, the court stated that although section 240 should be liberally construed to accomplish its purpose, it was inapplicable because it has, "historically been employed to protect the safety of employees working on scaffolding and other elevated structures” (Nagel v Metzger, supra, at 10).
That court has also found the section inapplicable to situations where the plaintiff, although working at an elevated position, did not sustain his injuries as a result of a fall. In Van Slyke v Niagara Mohawk Power Corp. (93 AD2d 990, affd 60 NY2d 774), plaintiff was injured by an electric shock when a tool in the aerial lift bucket from which he was working contacted a high voltage power line. On appeal, the court held that violations of section 240 (1) were improperly submitted to the jury because "[tjhat section benefits only those persons injured by a fall from an elevated height due to a lack of, or defective, safety devices designed to prevent such a fall” (Van Slyke v Niagara Mohawk Power Corp., supra, at 991). Simi *371 larly, the section was held inapplicable where a worker’s hand was crushed by a conveyor belt prematurely turned on while he was on a catwalk attempting to repair the belt (DaBolt v Bethlehem Steel Corp., 92 AD2d 70, appeal dismissed 60 NY2d 701).
Recently, in Staples v Town of Amherst (146 AD2d 292), a case involving a worker injured when a wall of a trench caved in, the Fourth Department was urged to reconsider its falling worker or objects test. After a review of the statute’s historical roots and the differing interpretations adopted by the Appellate Divisions for other Departments, the court declined the invitation to depart from the test which, the court observed, "has proven to be a useful tool in segregating those claims that are appropriate for summary disposition and imposition of absolute liability from those that are not” (supra, at 300). Finding it significant that the devices listed in the section "all commonly relate to the elevation of workers and their materials at construction sites” (supra, at 300), the court stated that the statute was directed at work which is " 'especially hazardous’ ” because it concerns heights, rather than the "myriad * * * common everyday work activities not involving heights” for which the imposition of absolute liability is unwarranted (supra, at 300, quoting Yaeger v New York Tel. Co., 148 AD2d 308, 312 [1st Dept, Mar. 7,1989]).
Thus, section 240 (1) claims have been rejected where a worker received an electric shock when a power ladder he was operating from the ground came into contact with a power line (Sherlock v Niagara Power Corp., 149 AD2d 946 [4th Dept, Apr. 14, 1989]), a worker’s eye was pierced by a ricocheting nail while he was standing on a beam (Herman v Lancaster Homes, 145 AD2d 926, lv denied 74 NY2d 601 [May 4, 1989]) and a worker was electrocuted while carrying a ladder (Dentico v Rochester Gas & Elec. Corp., 130 AD2d 953). In expressing disagreement with the Third Department’s more liberal interpretation of the statute, which has permitted recovery in instances unrelated to heights (e.g., Region v Woodward Constr., 140 AD2d 758, lv dismissed 72 NY2d 952 [worker electrocuted when cable he was holding came into contact with a power line]; Gregory v General Elec. Co., 131 AD2d 967 [worker suffered heart attack as a result of carrying heavy construction equipment]; Dougherty v State of New York, 113 AD2d 983 [worker slid down embankment while placing a ladder]), the Fourth Department stated that the risk of such injuries did not constitute the especially hazardous risk the *372 statute was designed to guard against, and that such expansive interpretation of section 240 (1) would result in other statutory protections (e.g., Labor Law §§ 200, 202-h, 241 [6]) becoming meaningless (Staples v Town of Amherst, 146 AD2d 292, 301, supra; see also, Yaeger v New York Tel. Co., 148 AD2d, supra, at 312).
This case clearly does not come within the class of accidents so excluded from section 240 (1) protection. Admittedly, the plaintiff did not fall from a height. However, he fell while working at a height, on the platform of an elevated scaffold or lift, his fall was caused by a sudden sway of that scaffold and, of special significance, the scaffold had a tendency to sway. Such facts place this case squarely within those risks section 240 (1) is designed to protect, that is, work activities which are especially hazardous because they concern heights. Section 240 (1) obligates owners and contractors to furnish safe scaffolding which will give proper protection to workers (see, Kalofonos v State of New York, 104 AD2d 75, 77, appeal withdrawn 66 NY2d 613), and every scaffold is required to be "provided with adequate horizontal and diagonal bracing to prevent any lateral movement” (12 NYCRR 23-5.1 [c] [2] [emphasis added]).
Having shown that defendant failed to provide a safe scaffold and that the condition of the scaffold was the proximate cause of his injuries, plaintiff is entitled to summary judgment as to liability under section 240 (1) (see, Bland v Manocherian, 66 NY2d 452, 459).
Defendant’s contention that adequate safety equipment was provided, because plaintiff was given a hard hat and safety glasses, and guardrails were present on the lift, has no relevance, since such devices obviously bear no relation to the stability of the scaffold. And the unsupported statement by defendant’s attorney that there were no safety devices which would have prevented plaintiff’s injury is also not a defense (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 524).
Although plaintiff is entitled to partial summary judgment under subdivision (1) of section 240, a question of fact exists which precludes summary judgment on his claim for liability under subdivision (3) of that section, which provides: "All scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon when in use.” Plaintiff’s claim here is based *373 upon a broken outrigger causing the scaffold to sway. However, this is disputed by Lawrence DeWolf, superintendent for John B. Pike & Son, Inc., who testified at an examination before trial that there was no problem with the outrigger before or after the accident and that the outriggers do not prevent swaying of the scaffold but merely stabilize the base. Thus, the resolution of this issue must await trial.

 Although plaintiffs original motion papers are predicated only on violation of subdivision (1) of section 240 of the Labor Law, at oral argument plaintiff stated that he was also relying on subdivision (3) of that section, and counsel for both parties were permitted to make additional submissions regarding such claim.