CHARLES ROSS, Appellant, v CURTIS-PALMER HYDRO-ELECTRIC COMPANY et al., Respondents.

Third Department, June 11, 1992

APPEARANCES OF COUNSEL

*Rosenblum, Ronan, Kessler & Sarachan (George L. Sarachan* of counsel), for appellant.

*Thuillez, Ford, Gold, Conolly & Kelly (Michael J. Hutter* of counsel), for respondents.

**OPINION OF THE COURT**

CASEY, J.

Plaintiff seeks to recover damages for an injury to his back

allegedly sustained while he was performing welding work for his employer, Bechtel Corporation, at a construction site in the Town of Corinth, Saratoga County. Defendants are Curtis-Palmer Hydro-Electric Company, the owner of the site, Saratoga Development Corporation, a general partner of Curtis-Palmer, and International Paper Company, the general contractor. International contracted with Bechtel to perform a portion of the construction work. Plaintiff's complaint includes causes of action based upon alleged violations of Labor Law §§ 200, 240 (1) and § 241 (6).

International moved for summary judgment dismissing plaintiff's complaint against it and plaintiff cross-moved for summary judgment on the issue of International's liability for the alleged violations of Labor Law § 240 (1) and § 241 (6). Supreme Court dismissed plaintiff's complaint against all defendants and denied plaintiff's motion for reconsideration, resulting in this appeal by plaintiff.

Plaintiff was required to perform the welding work from a temporary platform positioned over a 40-to-50-foot-deep concrete shaft. Because of the type and location of the platform, plaintiff had to sit on the platform, lean out and bend, with his head some two feet below his waist, to do the welding work. Although he did not fall from the platform, plaintiff alleges that because of the placement of the platform he was required to assume a position for a substantial period of time which caused an injury to his back.

The issue raised by plaintiff's Labor Law § 240 (1) cause of action is whether absolute liability can be imposed when one of the statutory devices is so constructed and placed that it creates a risk of harm which causes an injury to a worker for whose benefit the device was erected. This issue was neither raised nor decided in *Rocovich v Consolidated Edison Co.* (78 NY2d 509). At issue in *Rocovich* was the applicability of Labor Law § 240 (1) in a case where the injured worker was not provided with any of the devices listed in the statute. Absent some elevation-related risk involving the effects of gravity inherent in the work being performed, none of the statutory devices was required and, therefore, the Court of Appeals held that Labor Law § 240 (1) was not applicable *(supra,* at 513-514). This court previously reached a similar result in *Simon v Schenectady N. Congregation of Jehovah's Witnesses* (132 AD2d 313, 316). There is no basis for extending these holdings or the rationale for them to the entirely different issue presented where, as here, it is undisputed that

the injured worker was exposed to an elevation-related risk and one of the statutory devices was provided to the worker, who was injured as a result of a new and different risk of harm allegedly created by the improper construction, operation and/or placement of the statutorily required device.

Where there is an elevation-related risk and the worker is provided with one of the devices listed in Labor Law § 240 (1), the statute requires that the device "be so constructed, placed and operated as to give proper protection to" the worker performing the task. It would be illogical to conclude that a device need only provide proper protection from the specific elevation-related hazard which gave rise to the need for the device, without regard to whether the device is so constructed or placed as to create new hazards and dangers for the workers who use it, which may pose an even greater risk of harm than the original hazard. Neither the language of the statute itself nor the holding and rationale of the Court of Appeals in *Rocovich (supra)* requires or justifies such an illogical interpretation of the phrase "proper protection". To the contrary, such an interpretation would conflict with the purpose of Labor Law § 240 (1), which is to protect workers at building construction sites who are not in a position to protect themselves *(see, Rocovich v Consolidated Edison Co., supra,* at 513). Workers are in no better position to protect themselves from hazards created by the improper construction, placement or operation of the statutory devices than they are to protect themselves from the elevation-related hazard that gave rise to the need for the device.

Relying upon dictum in *Rocovich,* which states that the statutory devices are to be constructed, placed and operated so as to avoid the contemplated hazards *(supra,* at 513), the dissent goes one step farther to conclude that the statutory devices are to be constructed, placed and operated so as to avoid only the elevation-related hazard which gave rise to the need for the device. That a device must protect a worker from the particular elevation-related hazard which gave rise to the need for the device does not mean the Legislature intended that no other hazard created by the construction, placement or operation of the device is within the scope of the "proper protection" requirement of Labor Law § 240 (1). The statute contains no words of limitation on the term "proper protection", and the Court of Appeals did not address the issue in *Rocovich.*

This court has adopted an interpretation of Labor Law § 240

(1) which imposes absolute liability on an owner and/or contractor when a worker at a building construction site is exposed to an elevation-related risk and he sustains an injury as a direct and proximate result of improper construction, operation and/or placement of one of the devices listed in the statute. For example, in *Region v Woodward Constr.* (140 AD2d 758, *lv dismissed* 72 NY2d 952) a crane was being used to lift heavy objects and move them to another location. The process of lifting the objects clearly created an elevation-related risk that the object might fall and strike workers below and, therefore, Labor Law § 240 (1) required that the crane be placed and operated to give proper protection to those workers. During the work, the boom of the crane came in contact with a power line and one of the workers was electrocuted. We held that the crane was not placed and operated so as to give the statutorily required proper protection to the deceased worker.

The Fourth Department would apparently have reached a contrary result under its "falling worker or object" test because electrocution is a risk of common everyday work activities not involving heights *(see, Staples v Town of Amherst,* 146 AD2d 292, 300). If, however, the boom of the crane had come in contact with the power line after the heavy objects had been lifted in the air, and as a result of that contact the crane failed, causing the objects to fall on the worker, absolute liability would be imposed under the "falling worker or object" test *(see, supra).* From the worker's point of view the crane was clearly not placed or operated to give proper protection regardless of whether the crane's contact with the power line killed him directly by electrocution or by causing the heavy objects to fall on him. There is simply no justification in the language of Labor Law § 240 (1), or its purpose or legislative history, to construe the statute as applicable in the latter circumstance, but not the former. The incongruity in such an interpretation becomes even more apparent in a case where the crane's improper placement and operation near a power line is the proximate cause of two workers' deaths, one by electrocution because he was touching the crane and the second as a result of being struck by the heavy objects which fell when the crane mechanism failed due to the contact with the power line. It would be illogical to conclude that Labor Law § 240 (1) was intended to protect one of the workers but not the other. That injuries resulting from non-elevation-related hazards, including electrocution, caused by improper

construction, placement or operation of the statutory devices might give rise to causes of action under Labor Law §§ 200 and 241 (6), which do not impose absolute liability, is irrelevant to the question of whether the term "proper protection" in Labor Law § 240 (1) includes protection from such hazards.

We note that the Fourth Department has apparently carved out an exception to its "falling worker or object" test for injuries sustained when a worker falls *at* a height, but not *from* a height *(Aruck v Xerox Corp.,* 144 Misc 2d 367, *affd* 166 AD2d 907; *see, Pietsch v Moog, Inc.,* 156 AD2d 1019). Injuries from falling (as opposed to falling from a height) are obviously risks of common everyday work activities not involving heights *(see, Rocovich v Consolidated Edison Co., supra)* and, therefore, it is difficult to rationalize the holding of *Aruck v Xerox Corp. (supra)* with the Fourth Department's "falling worker or object" test. It is our view that the holdings in the *Aruck* and *Pietsch v Moog, Inc. (supra)* cases expose the inadequacy of attempting to fashion a rigid formula applicable to all cases. Rather, each case must be decided on the basis of all of the relevant facts and circumstances to determine whether the injured worker was exposed to an elevation-related risk, and if a Labor Law § 240 (1) device was provided, whether that device was constructed and placed so as to give proper protection to the worker. If the improper construction, operation or placement of the device is a proximate cause of the worker's injuries, the "proper protection" requirement of Labor Law § 240 (1) has not been complied with and absolute liability should be imposed regardless of whether the elevation-related risk itself caused the injuries. That is the rule in this Department *(see, e.g., Region v Woodward Constr., supra)* and the *Rocovich* case does not instruct us to abandon or limit our rule.

In the case at bar, the platform was so constructed and placed that plaintiff had to sit on the platform, lean out and bend, with his head some two feet below his waist, to do the welding work. Had he fallen into the hole while in this position there would be no question as to the imposition of absolute liability under Labor Law § 240 (1). The fact that he was agile enough to do the work without falling should not relieve defendants of absolute liability for injuries to plaintiff directly and proximately caused by the construction and placement of the platform. The proximate cause issue presents a question of fact in this case and, therefore, no party is

entitled to summary judgment on the Labor Law § 240 (1) cause of action.

■ Turning to the Labor Law § 200 cause of action, we conclude that a question of fact has been raised concerning International's supervisory control over Bechtel's activities which caused plaintiff's injuries. This is not a case where International had no contractual or other actual authority to control the injury-causing activity (see, Rapp v Zandri Constr. Corp., 165 AD2d 639, 641-642). To the contrary, the contract between International and Curtis-Palmer imposed upon International the duty and authority to provide all construction management and supervision. In these circumstances, the affidavit of International's safety supervisor, which alleges that International did not control or supervise Bechtel's workers, is insufficient to establish International's entitlement to judgment as a matter of law on this issue (see, Pritchard v Murray Walter, Inc., 157 AD2d 1012, 1014). Accordingly, summary judgment on plaintiff's Labor Law § 200 cause of action is inappropriate.

■ We reach a contrary conclusion as to plaintiff's Labor Law § 241 (6) cause of action. Plaintiff alleges that he was not adequately protected in the workplace, which is essentially the same claim as that asserted under the Labor Law § 200 cause of action and is insufficient to create a factual issue which would defeat International's summary judgment motion (see, Simon v Schenectady N. Congregation of Jehovah's Witnesses, 132 AD2d 313, 316-317, supra).

■ We note, however, that Supreme Court's grant of summary judgment to the nonmoving defendants, who submitted no evidentiary materials to show their entitlement to such relief, was clear error. As to the appealable portion of the order denying plaintiff's motion for reconsideration, we conclude that the renewal motion is academic. International failed to submit competent evidence sufficient to establish its entitlement to judgment as a matter of law on the issue of causation and, therefore, the physician's affidavit submitted with plaintiff's motion to renew is not necessary. The question of causation, in particular the question of whether the alleged improper construction and/or placement of the platform was a proximate cause of plaintiff's injuries, is a factual issue and the physician's affidavit would not require a contrary conclusion.

CREW III, J. (concurring). While I concur with the result

reached by the majority, I write separately because I differ with the reasoning concerning Labor Law § 240 (1) liability.

I agree with Justice Mercure that *Rocovich v Consolidated Edison Co.* (78 NY2d 509) has significantly limited our heretofore broad construction of the protection afforded by Labor Law § 240 (1). My reading of *Rocovich* leads me to believe that, in the usual way of things, the nature of the hazards the Court of Appeals has interpreted to be protected against are either a worker falling from an elevated workplace or an object falling upon a worker from an elevated workplace. I do not find apt the majority's example of electrocution by reason of a crane's contact with a power line in view of the *Rocovich* decision. Electrocution is not a hazard "related to the effects of gravity" *(supra,* at 514). That is not to say that the electrocuted worker envisioned by the majority is without protection. A cause of action predicated upon Labor Law § 241 (6) would be available *(see, Halftown v Triple D Leasing Corp.,* 89 AD2d 794; *see also,* 12 NYCRR 23-1.13). Indeed, in any situation involving hazards at the worksite unrelated to gravity a worker would have a remedy under the Labor Law *(see,* Labor Law §§ 200, 241). In spite of the deliminating language used by the Court of Appeals in *Rocovich,* I do not believe that it excludes all hazards other than falling workers or falling objects, so long as those hazards are related to the effects of gravity which I believe to be the situation in the case at bar. Here plaintiff has alleged that, due to the improper manner in which the platform was constructed and placed, he had to extend one of his legs against the side of the gate guide hole to prevent himself from falling into the hole and then bend forward and downward to perform the task assigned to him. It was allegedly as a result of this contorted position that plaintiff was injured. It strikes me that the position in which he was required to place himself to avoid falling raises a question of fact as to whether his injury was related to the effects of gravity, thereby precluding the grant of summary judgment.

I find merit in plaintiff's argument that Supreme Court abused its discretion insofar as it denied plaintiff's motion to renew his opposition to the motion for summary judgment based on his reasonable excuse for failing to submit a medical affidavit on the original motion. Plaintiff's excuse that he relied on International's concession in its memorandum of law that plaintiff's prolonged "bending" and not the "scaffolding" was the sole proximate cause of the injury is reasonable and Supreme Court's refusal to receive the affidavit in order to

raise a question of fact as to causation constituted an abuse of discretion. Accordingly, I would reverse the order of August 5, 1991, grant plaintiff's motion for renewal and deny summary judgment to all parties except International as to the cause of action based upon Labor Law § 241 (6).

MIKOLL, J. (concurring in part and dissenting in part). I respectfully dissent from so much of the majority's opinion as affirms Supreme Court's grant of summary judgment in favor of defendant International Paper Company dismissing plaintiff's claim brought pursuant to Labor Law § 241 (6). In my view International did not make out a prima facie case demonstrating its entitlement to summary judgment (see, Blair v Rosen-Michaels, Inc., 146 AD2d 863; Amedure v Standard Furniture Co., 125 AD2d 170, 172) and plaintiff has sufficiently demonstrated that a question of fact exists regarding whether International violated regulations 12 NYCRR 23-1.24 and 23-1.25 regarding proper scaffolding (see, Gregory v General Elec. Co., 131 AD2d 967, 969-970). I find the majority's reliance on Simon v Schenectady N. Congregation of Jehovah's Witnesses (132 AD2d 313, 317) misplaced as there this court noted "that nowhere in plaintiff's pleadings or submissions on the motion or this appeal does he make reference to any of the regulations adopted pursuant to Labor Law § 241 (6). Nor does plaintiff allege any type of negligent conduct by defendant other than the failure to provide a helper". Accordingly, in my view the order entered May 2, 1991 should be reversed and the motion of International for summary judgment denied in its entirety.

MERCURE, J. (concurring in part and dissenting in part). I respectfully dissent from so much of the majority's opinion as denied defendant International Paper Company's motion for summary judgment dismissing the Labor Law § 240 (1) and § 200 causes of action against it.

Initially, based upon my reading of Rocovich v Consolidated Edison Co. (78 NY2d 509), I would dismiss the Labor Law § 240 (1) cause of action. Prior to ROCOVICH, the troublesome issue of the scope of occupational hazards covered by section 240 (1), particularly whether a worker must be working at an elevated workplace or be struck by an object falling from an elevated site, resulted in conflicting decisions among the respective Departments of the Appellate Division (compare, Yaeger v New York Tel. Co., 148 AD2d 308 [1st Dept], with Staples v Town of Amherst, 146 AD2d 292 [4th Dept]; Gjertsen

*v Mawson & Mawson,* 135 AD2d 779 [2d Dept]; *Smith v Jesus People,* 113 AD2d 980 [3d Dept]; *Kahn v Gates Constr. Corp.,* 103 AD2d 438 [2d Dept]). Although this court has given broader construction to the scope of the protection afforded by Labor Law § 240 (1) than the other Departments *(see, Brogan v International Business Machs. Corp.,* 157 AD2d 76; *Region v Woodward Constr.,* 140 AD2d 758, *lv dismissed* 72 NY2d 952; *Gregory v General Elec. Co.,* 131 AD2d 967; *Dougherty v State of New York,* 113 AD2d 983; *Smith v Jesus People, supra),* the continuing validity of our expansive view has been called into question by *Rocovich.* We are now instructed that the contemplated hazards are those related to the effects of gravity where protective devices are called for either because of (1) a difference between the elevation level of the required work and a lower level, or (2) a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured *(see, Rocovich v Consolidated Edison Co., supra,* at 514). It is only in cases such as these that the proper erection, construction, placement or operation of the devices of the type listed in the statute would have prevented injury of the type contemplated *(see, supra,* at 513-514).

Plaintiff claims that International violated Labor Law § 240 (1) because the platform that he was directed to use while performing his welding job failed to give him proper protection, forcing him to work in an "over-strenuous and contorted position which strained and injured his back". I disagree. Applying the *Rocovich* test, I accept the proposition that there is a significant risk related to elevation differentials, given that the platform rested over a hole that was 40 to 50 feet deep. It cannot be said, however, that gravity was a factor in producing plaintiff's injury. Because the platform, as well as a lanyard and safety belt, were placed and operated in such a manner as to avoid the contemplated hazard, i.e., plaintiff's fall into the hole, I would dismiss the section 240 (1) cause of action *(see, supra,* at 513; *DeHaen v Rockwood Sprinkler Co.,* 258 NY 350, 353; *Amedure v Standard Furniture Co.,* 125 AD2d 170, 172). I cannot subscribe to the majority's conclusion that, if a safety device is required to protect against an elevation-related hazard, Labor Law § 240 (1) will impose strict nondelegable tort liability for injuries resulting from any deficiency in the device, even those which are wholly unrelated to the hazard which brought about its need in the first instance. To the contrary, the Court of Appeals has stated

that the statutory devices are to be " 'constructed, placed and operated' * * * [so] as to avoid the *contemplated* hazards" *(Rocovich v Consolidated Edison Co., supra,* at 513, quoting Labor Law § 240 [1] [emphasis supplied]; *see, DeHaen v Rockwood Sprinkler Co., supra).*

I also agree with Supreme Court's grant of summary judgment dismissing plaintiff's Labor Law § 200 (1) cause of action against International. Where, as in this case, the claimed defect arises out of a subcontractor's own methods or negligent acts occurring as a detail of its work, an owner or general contractor will not breach the duty of furnishing a safe workplace in the absence of actual supervisory control and notice of the unsafe condition *(see, Walsh v Sweet Assocs.,* 172 AD2d 111, 113, *lv denied* 79 NY2d 755; *Rapp v Zandri Constr. Corp.,* 165 AD2d 639, 641-642). International's prima facie showing that it did not exercise actual control over the activity bringing about the injury and that it had no notice of the use of an unsuitable welding platform was uncontroverted, and I am not persuaded that the contract between defendant Curtis-Palmer Hydro-Electric Company and International raises an issue of fact concerning International's obligation to supervise and control the work of Bechtel Corporation's employees *(cf., Pritchard v Murray Walter, Inc.,* 157 AD2d 1012, 1014).

WEISS, P. J., concurs with CASEY, J.; CREW III, J., concurs in a separate opinion; MIKOLL and MERCURE, JJ., concur in part and dissent in part, each in separate opinions.

Ordered that the order entered May 2, 1991 is modified, on the law, without costs, so as to grant summary judgment to defendant International Paper Company dismissing plaintiff's cause of action based upon Labor Law § 241 (6) and deny summary judgment to defendants in all other respects, and, as so modified, affirmed.

Ordered that the appeal from order entered August 5, 1991 is dismissed, without costs.