RONALD C. SMITH et al., Appellants, v NEW YORK STATE ELECTRIC & GAS CORPORATION et al., Respondents.

Third Department, March 11, 1993

## APPEARANCES OF COUNSEL

*John Young,* Binghamton *(Alfred Paniccia, Jr.,* of counsel), for appellants.

*Kathleen C. Sassani,* Syracuse *(Thomas N. Kaufmann* of counsel), for respondents.

## OPINION OF THE COURT

CASEY, J.

In May 1989, plaintiff Ronald C. Smith (hereinafter plaintiff), an ironworker employed by Minnotte Contracting Corporation, sustained injuries at a job involving the demolition and refurbishing of a coal-handling system at an electricity-generating plant owned by defendant New York State Electric & Gas Corporation. At the time of his injury, plaintiff was one of several ironworkers engaged in the dismantling of a coal conveyor system housed in an underground concrete vault. The vault was approximately 25 feet deep, 40 to 50 feet long and about 20 feet wide. At one end of the vault there was a relatively small opening in the ceiling through which a crane, positioned at ground level, was used to hoist dismantled pieces of the old conveyor system onto the ground where they would be hauled away. Due to the size of the ceiling opening and the location of the equipment to be moved, pieces could not be hoisted directly through the opening by the crane. Accordingly, a 200-pound tension ball and a hook were attached to the line and the ironworkers would then drag the line of the crane, including the tension ball, to the equipment to be removed. After the hook was fastened to the dismantled equipment, the crane then reeled in the line, dragging its load horizontally across the floor of the vault. Once the load was positioned beneath the opening, the crane would hoist the load to ground level.

The subject accident occurred when a dismantled piece of equipment that was being dragged horizontally along the floor of the vault caught and snagged on debris on the irregular surface of the floor. The crane continued to exert tension on the line until the line suddenly detached from the equipment, causing the tension ball to be propelled horizontally across the floor. The tension ball hit plaintiff in the back, causing his injuries. Plaintiff and his wife commenced this action against defendants alleging negligence, Labor Law § 240 (1) and § 241 violations and derivative causes of action. Following joinder of issue and some discovery, plaintiffs moved for partial sum-

mary judgment on their Labor Law § 240 (1) cause of action. Defendants cross-moved for partial summary judgment dismissing this cause of action. Supreme Court granted defendants' motion and denied that of plaintiffs. This appeal by plaintiffs followed.

In our view, plaintiffs' Labor Law § 240 (1) claim is viable and Supreme Court should not have dismissed it. The removal phase of the work exposed plaintiff and his co-workers to risks related to elevation differentials and the effects of gravity which required the provision of one or more of the safety devices listed in Labor Law § 240 (1) *(see, Rocovich v Consolidated Edison Co.,* 78 NY2d 509). The crane used to remove the dismantled pieces of equipment from the vault and hoist them to the ground above was such a device *(see, Region v Woodward Constr.,* 140 AD2d 758, *lv dismissed* 72 NY2d 952) and, therefore, the crane had to be constructed, placed and operated so as to give proper protection to those employed in the work *(see,* Labor Law § 240 [1]; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 180 AD2d 385, 388, *lv granted* App Div, 3d Dept, Sept. 18, 1992).

That the crane's hoisting mechanism was being used to apply a horizontal force to a dismantled piece of equipment when plaintiff was injured should not relieve defendants of the statutory "proper protection" requirement. Separate devices were not used to perform two discrete tasks, one involving only horizontal movement of the equipment and the other involving only the lifting of the equipment. The crane was used to perform all aspects of the removal of the equipment from the vault. It was located at ground level, some 25 feet above the level at which plaintiff was working. The crane remained in the same location and applied the same lifting force to the cable regardless of whether the object at the end of the cable was being dragged or lifted. Because of the physical principles, including the effects of gravity, inherent in the application of a lifting force to an object from any point other than directly over the object's center of gravity, the dismantled pieces of equipment were dragged across the vault by the crane's hoisting mechanism until they were directly under the opening in the ceiling of the vault through which the crane cable passed. That did not, however, transform the crane from a hoist into a winch or wheelbarrow, as the dissent suggests. Construing Labor Law § 240 (1) as requiring that the crane be constructed, placed and operated so as to give proper protection once it begins to lift the equipment, but not while

the equipment is being dragged across the floor by the same mechanism that does the lifting, is illogical and conflicts with the purpose of the statute, which is to protect workers at building construction sites who are not in a position to protect themselves *(see, Rocovich v Consolidated Edison Co.,* 78 NY2d 509, 513, *supra).* Plaintiff was in no better position to protect himself from the improper operation of the crane's hoisting mechanism while the equipment was being dragged across the floor than he was once the crane began to lift the object.

Although the work in which plaintiff and his co-workers were engaged involved the removal of dismantled pieces of equipment from an underground vault and required the use of a crane to hoist the equipment out of the vault to ground level, thereby creating an elevation-related risk, defendants contend that plaintiff was not injured by that elevation-related risk. The crane, however, was applying a lifting force to the cable when the cable detached from the dismantled piece of equipment, and gravity obviously played a substantial role in the risk of harm that actually resulted in plaintiff's injuries. Nevertheless, assuming that plaintiff's injuries were not caused by the elevation-related risk inherent in the removal of the equipment from the underground vault, which triggered the "proper protection" requirement, the rule in this Department is that "[i]f the improper construction, operation or placement of the device is a proximate cause of the worker's injuries, the 'proper protection' requirement of Labor Law § 240 (1) has not been complied with and absolute liability should be imposed regardless of whether the elevation-related risk itself caused the injuries" *(Ross v Curtis-Palmer Hydro-Elec. Co.,* 180 AD2d 385, 390, *supra).* For all of these reasons, it is our view that a question of fact exists as to whether the improper construction, placement or operation of the crane was a proximate cause of plaintiff's injuries, and, therefore, neither party is entitled to summary judgment on the Labor Law § 240 (1) cause of action.

Misapprehending the nature and/or extent of our holding, the dissent asserts that we would apply Labor Law § 240 (1) whenever the work involves a device that is "usually related to elevation risk activities". Recent case law, however, clearly establishes that we would not reach such a result. In *Carringi v International Paper Co.* (184 AD2d 137),* the work involved

---

* The dissenter was a member of the unanimous panel that decided the *Carringi* case.

a crane, which certainly meets the dissent's definition of a device that is "usually related to elevation risk activities", but we held that Labor Law § 240 (1) was not applicable because the work did not actually entail an elevation-related risk. Contrary to the dissent's assertion, our holding in this case is a limited one, based upon the particular undisputed facts and circumstances which establish as a matter of law that, for the purposes of determining whether Labor Law § 240 (1) was violated, the work being done by plaintiff and his co-workers, i.e., the removal of heavy pieces of equipment from an underground vault, cannot rationally be divided into discrete tasks, one of which involved only horizontal movement of equipment. Because the use of the crane to remove the pieces of equipment from the underground vault involved an elevation-related risk, the "proper protection" requirement of Labor Law § 240 (1) was applicable to the crane regardless of whether, at the moment plaintiff was injured, the equipment was being dragged across the floor of the vault by the crane's hoisting mechanism or lifted through the opening in the ceiling of the vault.

HARVEY, J. (dissenting). I respectfully dissent and would affirm the order of Supreme Court.

Initially, I note my agreement with the majority that a crane such as the one employed in this case to drag the dismantled pieces of equipment is normally a safety device utilized to elevate objects. However, there was no dispute in this case that the crane was not being used for that purpose at the time of the accident. Instead, plaintiff Ronald C. Smith (hereinafter plaintiff) was injured when a piece of equipment that was being dragged horizontally along the floor of the vault by a crane that was being used as a winch, caught and snagged on debris on the irregular surface of the floor. While the crane operator, located above the opening in the vault ceiling, could have easily seen any problems pertaining to objects being elevated, he could not see the problem occurring in this case because of the dragging operation. As a result, the crane continued to exert pressure, the line snapped and the tension ball hit plaintiff. The majority claims that this occurred because defendants failed to protect plaintiff against "elevation-related risk[s] involving the effects of gravity" (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 180 AD2d 385, 387, *lv granted* App Div, 3d Dept, Sept. 18, 1992).

I cannot agree with this conclusion. The crux of the major-

ity statement is its contention that, no matter how a safety device is being used, Labor Law § 240 (1) will apply as long as the safety device is usually related to elevation risk activities. The irrationality of this approach is highlighted by a simple analogy: assume, for instance, that a painter had finished painting a house and wished to move all his equipment over to a garage to begin painting that structure. Lacking a cart to pull his equipment, he decided to load it on top of the ladder and drag it over to the garage. In doing so, he tripped and was injured. Under the majority's analysis, he could recover under Labor Law § 240 (1) because he *eventually* planned to climb that ladder again. This would be so despite the obvious fact that his injuries did not occur because of a defect in the ladder as an elevating safety device but because of the ladder's improper use as a wheelbarrow.

In my view, the majority's reasoning appears to fly in the face of the Court of Appeals' decision in *Rocovich v Consolidated Edison Co.* (78 NY2d 509). In *Rocovich,* the Court attempted to clear up some of the confusion in Labor Law § 240 (1) cases in the various courts and to definitively define the scope of work site activities embraced by the statute. The Court noted that protective devices are called for in such cases "because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" *(supra,* at 514). Clearly, neither of these two contemplated scenarios was involved in the case at bar. Therein lies the difference in my thinking and that of the majority. The statute was designed to protect those involved in elevation-related risks. Application depends upon the activity being performed. An activity does not become an elevation-related risk simply because the equipment being used is eventually intended to be used to raise materials from one level to another.

I also disagree with the broad interpretation of the phrase "effects of gravity". Certainly gravity had an effect upon the activity being conducted. Otherwise, there would have been no need for mechanized equipment to move the debris from one end of the vault to the other. But it is obvious that the Court of Appeals used that phrase to better define the consequences of elevation-related accidents. There was no evidence that there was any lifting of any nature at the time plaintiff was injured.

WEISS, P. J., MERCURE and CREW III, JJ., concur with CASEY, J.; HARVEY, J., dissents in a separate opinion.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' cross motion for partial summary judgment dismissing plaintiffs' Labor Law § 240 (1) cause of action; cross motion denied; and, as so modified, affirmed.