292

PAUL C. STAPLES et al., Respondents, v TOWN OF AMHERST, Appellant and Third-Party Plaintiff, et al., Defendant. M. C. MORGAN CONTRACTORS, INC., Third-Party Defendant-Appellant.

Fourth Department, April 14, 1989

APPEARANCES OF COUNSEL

*Rosenthal, Siegel, Muenkel, Wolf & Curvin (Steven P. Curvin* of counsel), for appellant and third-party plaintiff.

*Damon & Morey (Mark Spitler* of counsel), for third-party defendant-appellant.

*Paul W. Beltz, P. C.,* for respondents.

### OPINION OF THE COURT

DENMAN, J.

On this appeal, we are called upon to reconsider our prior decisions holding that absolute liability under Labor Law § 240 (1) may be imposed only upon a showing that the injured worker fell from an elevated work surface or was struck by an object falling from an elevated work surface. We decline plaintiffs' invitation to overrule our prior decisions and instead we adhere to the "falling worker or objects" test. Accordingly, we reverse the order granting partial summary judgment to plaintiffs on their section 240 (1) claim and grant summary judgment to defendant dismissing that claim.

The papers submitted on plaintiffs' motion establish that plaintiff Paul Staples,* an employee of third-party defendant M. C. Morgan Contractors, Inc. (Morgan), was a laborer at a construction site owned by defendant Town of Amherst (Town). Pursuant to its contract with the Town, Morgan was excavating beneath the street in order to replace a sewer line. The crew had dug a trench approximately 10 to 11 feet deep and 12 feet wide and had begun to shore up the walls of the trench. On the order of their supervisor, Staples and a co-worker descended into the trench and placed sheets of plywood against its walls. As the men prepared to brace the sheets of plywood, the wall of the trench caved in, injuring Staples and killing his co-worker. It is uncontroverted that the Town did not provide any safety devices for the protection of the workers.

Plaintiffs commenced this action against the Town and the Town impleaded Morgan. Although plaintiffs' amended complaint is not contained in the record, it apparently states causes of action for negligence; violation of Labor Law §§ 200, 240 (1) and § 241 (6) and regulations promulgated thereunder; and violation of OSHA and rules and standards promulgated

---

* The claim of plaintiff Carol Staples is derivative.

thereunder. Plaintiffs subsequently moved for partial summary judgment on their Labor Law § 240 (1) claim. In opposition to the motion, the Town raised only procedural objections which it reiterates on this appeal but which we do not find persuasive. Morgan opposed the motion and sought summary judgment on behalf of itself and the Town on the ground that section 240 (1) does not impose liability on these facts. The court granted plaintiffs' motion and entered partial summary judgment against the Town.

The Town and Morgan argue that Labor Law section 240 (1) is inapplicable to these facts and that summary judgment therefore should be granted to defendant dismissing that claim. They contend that section 240 (1) imposes liability only where the worker falls from an elevated work site or is hit by an object falling from an elevated work site. In response, plaintiffs contend that section 240 (1) does apply to these facts and that we should reconsider our prior decisions employing the falling worker or objects test. We agree with appellants that, according to our prior decisions, a plaintiff may not recover under section 240 (1) for injuries sustained in an excavation cave-in *(see, Fox v Jenny Eng'g Corp.,* 122 AD2d 532, *affd* 70 NY2d 761) and we reject plaintiffs' invitation to overrule our precedents and discard the falling worker or objects test. In our view, the test has historical roots, is based upon a rational reading of the statute, is in keeping with the legislative intent, and has proven to be a useful tool in segregating meritorious claims from those that are not appropriate for summary disposition and imposition of absolute liability.

Labor Law § 240 (1) provides, in pertinent part: "All contractors and owners * * * in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." Historically, this statute, which has existed in various forms since 1885 *(see, Wingert v Krakauer,* 76 App Div 34, 39-40), was known as the "Scaffolding Law", and accordingly was given an extremely narrow interpretation *(see, e.g., Broderick v Cauldwell-Wingate Co.,* 301 NY 182 [plaintiff denied recovery for fall resulting from collapse of formwork which he was building for a concrete floor; held, platform

which collapsed was not a scaffold within the meaning of the statute]). A prominent early case is *Wingert v Krakauer (supra),* where the court described the purpose of the statute as follows:

"It seems to be evident, from the language of all this legislation, that its primary purpose was to protect the lives and limbs of persons who should be employed upon scaffolding, and in the enumeration of the appliances and contrivances which the master is under an absolute duty to make safe, is found hoists, stays, ladders or other mechanical contrivances. * * * In terms the statute protects the workmen in the use of a scaffolding for the alteration of any structure. It does not assume to define what the structure shall be or in what the alteration shall consist. If it be a structure, and if it be an alteration of such a character as requires the erection of a scaffolding to make it, it would seem to come, not only within the spirit, but literally within the terms of the act. It is as essential to protect the life and limb of a person in making use of a scaffolding necessary to effect an alteration in a room as it is to protect the same person in the use of a scaffolding in the erection or repairing of a house or structure where there exists necessity for the use of scaffolding. * * *

"[I]t is this insecurity in the use of the scaffold which the statute designed to protect rather than in the character of the work which was being prosecuted in order to effect the alteration." *(Wingert v Krakauer, supra,* at 40-41.)

The *Wingert* court thus authorized recovery under the statute to a plaintiff injured when a scaffold collapsed on his foot *(Wingert v Krakauer, supra,* at 37-38). As recently as 1948, the Court of Appeals took a more restrictive view of the statutory protection. In *Koenig v Patrick Constr. Corp.* (298 NY 313), the court imposed liability under the statute for injuries sustained by a worker who fell from a ladder. Concluding that plaintiff was within the class protected by the statute, the court nonetheless stated, in dictum: "A different case would be before us if the injured person were a passerby or a workman struck by a falling ladder; as to them—*persons outside the class for whose special benefit the statute was designed*—a violation might do no more than evidence negligence." *(Koenig v Patrick Constr. Corp., supra,* at 319 [emphasis supplied].) Thus, the weight of early authority seems to be that, in order to recover under the statute, plaintiff must have fallen while using one of the enumerated devices or, possibly, been struck

by a falling device *(Koenig v Patrick Constr. Corp., supra; Wingert v Krakauer, supra; but see, Armenti v Brooklyn Union Gas Co.,* 157 App Div 276 [held: statutory liability imposed in favor of plaintiff injured in cave-in of sewer excavation]).

This court has applied that interpretation of the statute in a line of cases dating from our 1983 decision in *DaBolt v Bethlehem Steel Corp.* (92 AD2d 70, *lv dismissed* 60 NY2d 554, *appeal dismissed* 60 NY2d 701). In *DaBolt,* our first comment upon the issue in recent times, we held that "[s]ection 240 has historically been employed to protect workers at elevated heights from falls caused by defective safety equipment" *(DaBolt v Bethlehem Steel Corp., supra,* at 74). We rejected the section 240 (1) claim of a worker whose hand was crushed while he was repairing a conveyor belt on a steel slag separator. Subsequently, we rejected a section 240 (1) claim brought by a worker who was injured by an electric shock when an aerial lift in which he was standing came into contact with power lines *(Van Slyke v Niagara Mohawk Power Corp.,* 93 AD2d 990, *affd* 60 NY2d 774). There, we held that the court erred in submitting the section 240 (1) claim to the jury because "[t]hat section benefits only those persons injured by a fall from an elevated height due to a lack of, or defective, safety devices designed to prevent such a fall" *(Van Slyke v Niagara Mohawk Power Corp., supra,* at 991). Similarly, in *Nagel v Metzger* (103 AD2d 1), we reiterated our holding in *DaBolt* that the statute historically had been employed to protect the safety of employees working on scaffolding and other elevated structures, and dismissed a section 240 (1) claim brought on behalf of a worker who was killed when struck in the head by a tree trunk. The accident occurred when the tree, which was suspended from a crane by a wire, spun into the decedent when the wire twisted *(Nagel v Metzger, supra).*

Our next significant decision in this area was *Siragusa v State of New York* (117 AD2d 986, *lv denied* 68 NY2d 602), where we affirmed the dismissal of a section 240 (1) claim by a worker injured when he drove a vehicle off a highway under construction. We held, "The statute is addressed to situations in which a worker is exposed to the risk of falling from an elevated work site or being hit by an object falling from an elevated work site" *(Siragusa v State of New York, supra,* at 987). In *Fox v Jenny Eng'g Corp.* (122 AD2d 532, *affd* 70 NY2d 761, *supra),* we dismissed a section 240 (1) claim by a worker who was struck by a rock that fell from the ceiling of a sewer

tunnel under construction. We held that section 240 (1) is inapplicable to that injury, since it addresses situations in which a worker is exposed to the risk of falling from, or being hit by an object falling from, an elevated work site *(Fox v Jenny Eng'g Corp., supra)*. In *Lockwood v National Valve Mfg. Co.* (143 AD2d 509), we reiterated the test enunciated in *Siragusa* and *Fox,* and upheld a section 240 (1) claim brought by a worker injured when he either jumped or fell from a beam while attempting to avoid a falling 10-ton pipe. Our most recent decision in this area is *Klien v General Foods Corp.* (— AD2d — [Mar. 10, 1989]), which cites *DaBolt* and *Lockwood (supra)* for the proposition that the statute was designed to protect employees working on scaffolding and other elevated structures, and upholds a section 240 (1) claim on behalf of a worker who fell at a construction site.

The other Departments have adopted differing interpretations of the statute. In a recent decision, the First Department dismissed a section 240 (1) claim brought by a worker injured while working at the bottom of an elevator shaft when a supporting chain proved insufficient to suspend a steel platform over his head *(Yaeger v New York Tel. Co.,* — AD2d — [Mar. 7, 1989]). The *Yaeger* court held that the devices enumerated in the statute "all relate to work performed at elevated heights", and thus concluded that the statute is directed exclusively "at work which is especially hazardous because it concerns heights" *(Yaeger v New York Tel. Co., supra,* at —). The *Yaeger* court indicated that it "prefer[red]" this court's interpretation that that statute should be invoked only "where an employee's injury is somehow related to work performed at heights," yet took a more restrictive approach than our falling worker or objects test and seems to have insisted upon a strict fall requirement *(supra,* at —). Indeed, the dissent in *Yaeger* cited our *Siragusa* case *(supra)* in support of its contention that section 240 (1) permitted recovery on those facts *(Yaeger v New York Tel. Co., supra* [Asch, J., dissenting]).

The position of the Second Department is less clear. In its first significant discussion of the issue in recent times, the court, in dictum, quoted our *Van Slyke* decision *(supra)* for the proposition that the statute " 'benefits only those persons injured by a fall from an elevated height due to a lack of, or defective, safety devices designed to prevent such a fall' " *(Mack v Altmans Stage Light. Co.,* 98 AD2d 468, 473). The *Mack* court stated that, in order to come within the ambit of

the statute, plaintiff either must have fallen from an unsecured ladder or platform or been struck by a falling ladder or platform *(Mack v Altmans Stage Light. Co., supra)*. In its next decision on the issue, *Kahn v Gates Constr. Corp.* (103 AD2d 438), the Second Department, while citing *Mack,* apparently retreated from its endorsement of the fall or falling object requirement and reinstated a section 240 (1) claim brought by a worker who was injured on an undersea sewer construction project. Plaintiff and his fellow divers were positioning a section of sewer pipe that was suspended by cables from a barge on the ocean's surface. Waves caused the barge and pipe to bob and the lift cable to slacken and tighten, causing plaintiff's hand to become caught between the pipe and choker assembly *(Kahn v Gates Constr. Corp., supra,* at 439-441, 446). The Second Department's most recent case in this area, *Gjertsen v Mawson & Mawson* (135 AD2d 779), also seems to evince a comparatively liberal interpretation of section 240 (1). Although the decision in *Gjertsen* does not reveal the precise nature of the accident, it seems to hold that a plaintiff states a valid section 240 (1) claim merely by alleging that he was injured by unloading materials at a construction site, at least where he challenges the adequacy of the means provided to unload the materials *(Gjertsen v Mawson & Mawson, supra)*.

The Third Department has adopted the most liberal interpretation of the statute, although that court has spoken inconsistently on the point. In *Smith v Jesus People* (113 AD2d 980), a pre-*Siragusa* case, the Third Department indicated its rejection of the fall requirement enunciated in *DaBolt* and *Van Slyke (supra)* and upheld a section 240 (1) claim brought by a plaintiff who was struck by a plank that fell from a scaffold. In a companion case to *Smith, Dougherty v State of New York* (113 AD2d 983), the court rejected the fall requirement set out in *Van Slyke* and sustained a section 240 (1) claim brought by a plaintiff who slid down an embankment while placing a ladder. The dissent in *Dougherty* took the position that it was necessary for plaintiff to have been working at an elevated height in order to recover under the statute, although a fall was not strictly necessary *(Dougherty v State of New York, supra* [Harvey, J., dissenting]). In *Amedure v Standard Furniture Co.* (125 AD2d 170), a 3 to 2 decision, the Third Department relied on a causation analysis to reject a section 240 (1) claim brought by a carpenter who was injured while kneeling on a scaffold when struck in the eye by a ricocheting nail. Plaintiff claimed that the scaffolding was

erected at an unsafe height, requiring him to kneel, an allegation which the dissent regarded as stating a section 240 (1) violation *(Amedure v Standard Furniture Co., supra* [Mikoll and Yesawich, Jr., JJ., dissenting]). In *Gregory v General Elec. Co.* (131 AD2d 967), a unanimous decision written after this court's decision in *Siragusa (supra)*, the Third Department criticized our falling worker or objects test as "an unreasonably restrictive interpretation of the statutory protection afforded" *(supra,* at 968). Consequently, the court upheld a section 240 (1) claim by a worker who suffered a heart attack as a result of carrying heavy construction equipment. The court held that the defendant's failure to provide hoists, in violation of the statute, necessitated plaintiff's overstrenuous activity and thus caused his heart attack *(Gregory v General Elec. Co., supra)*. In a unanimous decision issued after its decision in *Gregory,* the Third Department rejected a section 240 (1) claim brought by a carpenter who injured his hand when he lost his grip on a power saw *(Simon v Schenectady N. Congregation of Jehovah's Witnesses,* 132 AD2d 313). The *Simon* court, without citing its decision in *Gregory,* seemingly backtracked from that expansive interpretation of section 240 (1) and imposed a test similar to that employed by this court in *Siragusa* and *Fox (supra)*. The *Simon* court stated, "The pertinent subdivision, Labor Law § 240 (1), has been held to impose the duty to provide safety equipment to protect workers from hazards related to elevating themselves or their materials at the work site" *(Simon v Schenectady N. Congregation of Jehovah's Witnesses, supra,* at 316). In its most recent decision in this area, the Third Department unanimously upheld a section 240 (1) claim brought on behalf of a worker who was electrocuted when a cable he was holding came into contact with a power line *(Region v Woodward Constr.,* 140 AD2d 758, *lv dismissed* 72 NY2d 952). The court did not cite its prior conflicting decisions or otherwise address the fall or elevation requirement.

In urging us to reconsider our prior decisions, plaintiffs argue that the Third Department's interpretation of the statute is correct and point out that the Court of Appeals, in affirming our decision in *Fox,* declined to approve our application of the falling worker or objects test *(Fox v Jenny Eng'g Corp.,* 70 NY2d 761, 763, *supra)*. The Court of Appeals affirmed our decision in *Fox* on the ground that defendants were not owners or agents of the owner within the meaning of Labor Law § 240 (1), thus avoiding comment on the fall or

elevation requirement *(Fox v Jenny Eng'g Corp., supra)*. Nevertheless, while not expressly ruling on the issue in *Fox*, the Court of Appeals has affirmed or declined to review other decisions from this court in which we have enunciated that principle *(see, Van Slyke v Niagara Mohawk Power Corp.,* 60 NY2d 774, *affg* 93 AD2d 990, *supra; see also, Herman v Lancaster Homes,* 74 NY2d 601; *denying lv from* 145 AD2d 926; *Siragusa v State of New York,* 68 NY2d 602, *supra; DaBolt v Bethlehem Steel Corp.,* 60 NY2d 554, 701, *supra)*.

In our view, the falling worker or objects test has proven to be a useful tool in segregating those claims that are appropriate for summary disposition and imposition of absolute liability from those that are not. We have employed that test to dismiss claims which, in our view, the Legislature could not have intended to come within the coverage of the statute. For example, in *Sherlock v Niagara Mohawk Power Corp.* (— AD2d — [Apr. 14, 1989]), we rejected the claim of a worker who was injured by an electrical shock when a power ladder/hoist that he was operating from the ground came into contact with a power line. In *Herman v Lancaster Homes* (145 AD2d 926, *lv denied* 74 NY2d 601, *supra)*, we dismissed a section 240 (1) claim brought by a worker whose eye was pierced by a ricocheting nail while he was standing on a beam. In *Dentico v Rochester Gas & Elec. Corp.* (130 AD2d 953), we held the statute inapplicable to a claim on behalf of a worker who was electrocuted while carrying a ladder *(see also, Siragusa v State of New York, supra)*. In contrast, the Third Department's more liberal interpretation of the statute has led to results which, in our view, could not have been intended by the Legislature. To impose absolute liability for injuries sustained by a worker who slid down a slope at a work site *(Dougherty v State of New York, supra)* or who had a heart attack as a result of lifting heavy equipment *(Gregory v General Elec. Co., supra)* seems wholly unwarranted. The risk of such injuries does not constitute the "especially hazardous" risk that the statute was designed to guard against *(Yaeger v New York Tel. Co., supra)*. We find it significant that the devices enumerated in the statute all commonly relate to the elevation of workers and their materials at construction sites *(see, Yaeger v New York Tel. Co., supra)*. Indeed, because the injuries in *Dougherty* (slip and fall), *Gregory* (heart attack), and *Region* (electrocution) are risks of "a myriad of common every day work activities not involving heights" *(see, Yaeger v*

*New York Tel. Co., supra,* at —), such expansive interpretation of section 240 (1) would result in other statutory protections *(see,* Labor Law §§ 200, 202-h, 241 [6]) becoming meaningless *(see, Yaeger v New York Tel. Co., supra).* Interpreting section 240 (1) to permit recovery by plaintiff in this case would render section 241 (6) superfluous. That statute expressly applies to excavation sites and requires that such areas be shored for the reasonable and adequate protection and safety of workers (Labor Law § 241 [6]; *see, Copertino v Ward,* 100 AD2d 565; *Page v State of New York,* 73 AD2d 479, *affd* 56 NY2d 604; *Tilkins v City of Niagara Falls,* 52 AD2d 306). The Legislature could not have thought it necessary to amend section 241 to require that excavation sites be safeguarded (L 1932, ch 470, § 1), or to enact and reenact a new subdivision (6) incorporating such requirement (L 1962, ch 450, § 3; L 1969, ch 1108, § 3), unless the Legislature believed that section 240 (1) did not apply to excavation cave-ins.

For the foregoing reasons, we adhere to our prior decisions and conclude that Labor Law § 240 (1) does not impose liability in favor of a worker injured in the collapse of an excavation trench. Accordingly, the order appealed should be reversed and summary judgment should be granted to defendant dismissing plaintiffs' cause of action alleging violation of Labor Law § 240 (1).

DILLON, P. J., BOOMER, GREEN and LAWTON, JJ., concur.

Order unanimously reversed, on the law, without costs, and summary judgment granted to defendant dismissing the cause of action alleging violation of Labor Law § 240 (1).