**Norman PHANEUF and Kathleen Phaneuf, Plaintiffs,**

v.

**TENNECO, INC., Defendant.**

No. 93–CV–1199.

United States District Court,
N.D. New York.

Sept. 5, 1996.

Office of Louis T. Brindisi and Anthony A. Murad, Utica, NY (Louis T. Brindisi, of counsel), for plaintiffs.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, Albany, NY (Terence S. Hanigan, of counsel), for defendant.

### MEMORANDUM, DECISION, AND ORDER

HURD, United States Magistrate Judge.

Presently before the court is a motion by the plaintiffs to amend their complaint. Oral

argument on this matter was heard on June 13, 1996, in Utica, New York. In reaching the conclusions presented in this order, the court has considered the plaintiff's notice of motion to serve an amended complaint, the accompanying affidavit, memorandum of law, reply memorandum of law, and proposed amended complaint as well as the defendant's papers in opposition and information gathered at oral argument.

## I. FACTS

Norman Phaneuf ("Phaneuf") was employed as a laborer by Southeast Pipeline Contractors ("Southeast") when he was injured in an accident. Southeast was performing a subcontract for the defendant Tenneco, Inc. ("Tenneco") which involved laying underground gas pipe from Albany, New York to Massachusetts. At the time of his injury, Phaneuf was working at the Albany site.

On the afternoon of July 17, 1992, the plaintiff was laying sandbags at the bottom of a pipeline trench approximately five feet wide and ten feet deep. Another Southeast employee was standing on the edge of the trench and dropping fifty pound sandbags into the trench. Plaintiff was allegedly injured when the Southeast co-employee threw a sandbag which hit the plaintiff on the left knee.

On August 6, 1993, the plaintiff and his wife filed a complaint alleging separate causes of action in which the accident and injuries complained of were attributable to the defendant's negligence and violations of N.Y.Lab.Law §§ 200(1) and 241(6) (McKinney 1986). On February 11, 1994, a Uniform Pretrial Scheduling Order issued by this court established deadlines for amending any pleadings (March 31, 1994), for discovery (July 30, 1994), and for filing all motions (August 31, 1994). Trial was tentatively scheduled for October 3, 1994. The parties subsequently agreed to a Stipulation Amending the Pretrial Scheduling Order on November 15, 1995. The amended order pushed the discovery deadline to July 1, 1996, the motion deadline to August 1, 1996, and the trial ready date to September 1, 1996. No provision was made for extending the deadline for amending the pleadings.

On May 10, 1996, almost three years after the filing of the complaint and over two years after the amended pleadings deadline, plaintiffs moved to serve an amended complaint which would: 1) add a new cause of action under N.Y.Lab.Law § 240(1) (McKinney 1986) ("N.Y. Labor Law § 240(1)"); 2) add New York Code of Rules and Regulations, Industrial Code § 23 violations to the N.Y. Lab.Law § 241(6) (McKinney 1986) ("N.Y.Labor Law § 241(6)") claim in the original complaint; 3) add clarifying language to the complaint which would not only cover "agents of the defendant" but "laborer's at the site under the supervision and control of the defendant;" and 4) designate each cause of action as separate and distinct claims which would raise the plaintiffs' demand from $650,000 to $2,150,000.

Defendant opposes the motion on the grounds of undue delay, prejudice, and futility of the proposed amendments.

## II. DISCUSSION

The rules governing amendment of pleadings after the deadline established in a pretrial scheduling order are set forth in rules 15 and 16 of the Federal Rules of Civil Procedure. In an effort to expedite the disposition of pending actions, Rule 16 provides for pretrial conferences, scheduling, and management. Rule 16(b) specifically sets forth that a District Court "shall ... enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings ..." Fed.R.Civ.P 16(b). The rule further provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge, or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). Generally, a party is free to amend the pleadings as a matter of course prior to the service of the responsive pleading or at any time within 20 days after it is served. Fed.R.Civ.P. 15. "Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15.

When Rule 16 and Rule 15 come into conflict, however, "Rule 16 must be read in light of Rule 15." *Usery v. Marquette Cement Mfg. Co.,* 568 F.2d 902, 909 (2d Cir. 1977) (citing 3 Moore's Federal Practice ¶ 15.13[1] (2d ed. 1974)). In deciding which rule to apply, " 'the court must ... balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements.' " *Id.* (citing Moore, *supra,* at ¶ 16.20)

Historically, Rule 15 has been applied extremely liberally. The underlying premise behind the liberal construction of the Rule 15 is to afford a plaintiff "an opportunity to test his claims on the merits" rather than lose on a procedural imperfection. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Supreme Court has found that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require be "freely given."

*Id.; Union Bank of India v. Seven Seas Imports, Inc.,* 727 F.Supp. 125, 133 (S.D.N.Y. 1989) ("[a] motion to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment, or prejudice to the opposing party"). "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion." *Acito v. IMC-ERA Group, Inc.,* 47 F.3d 47, 55 (2d Cir. 1995) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Bldg. 1 Housing Dev. Fund Co., Inc.,* 608 F.2d 28, 42 (2d Cir. 1979)); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458 (2d Cir. 1994).

Generally, while a delay in making a motion to amend the pleadings must be weighed as a factor in deciding whether or not to grant the motion, the delay by itself will not be reason to deny the motion. *U.S. v. Continental Ill. Nat. Bank and Trust,* 889 F.2d 1248, 1254 (2d Cir.1989). For example, the Second Circuit has found that a three year delay from filing the initial complaint was an inadequate basis for denying a motion to amend a complaint when there was no showing of bad faith on the part of the plaintiff or prejudice to the defendant. *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.,* 392 F.2d 380 (2d Cir.1968).

However, the Second Circuit has noted that "[a]lthough the grant or denial of leave to amend is within the discretion of the district court, a decision 'without any justifying reason' may be an 'abuse of that discretion and inconsistent with the spirit of the Federal Rules.' " *Evans v. Syracuse City School Dist.,* 704 F.2d 44, 46 (2d Cir.1983) (quoting *Foman,* 371 U.S. 178, 182, 83 S.Ct. 227, 230). In instances "where ... 'a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some "valid reason for his [or her] neglect and delay." ' " *Sanders v. Thrall Car Mfg. Co.,* 582 F.Supp. 945 (S.D.N.Y.1983); *aff'd,* 730 F.2d 910 (2nd Cir. 1984) (citing *Hayes v. New England Millwork Distribs., Inc.,* 602 F.2d 15, 19–20 (1st Cir.1979) (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967)); *Greenberg v. Mynczywor,* 667 F.Supp. 901, 905 (D.N.H.1987) (if considerable delay has occurred, the burden shifts to the movant to show a valid reason for the Court to excuse the delay). " '[The court] must weigh good cause shown for the delay in moving *vis a vis* dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to meet the tendered issue.' " *Evans,* 704 F.2d at 47 (quoting *Nevels v. Ford Motor Co.,* 439 F.2d 251, 257 (5th Cir.1971). Further, in addressing prejudice to the nonmoving party, the Second Circuit noted that " '[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.' " *Evans,* 704 F.2d at 47 (quoting *Advocat v. Nexus Indust., Inc.,* 497 F.Supp. 328, 331 (D.Del.1980)). Finally, although leave to

**116**

amend is to be freely given, denial of a motion to amend is appropriate when the sole reason for the undue delay is ignorance of the law. *Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir.1976) (citations omitted).

### A. *Request to Add New Cause of Action Under 240(1)*

Plaintiffs seek to amend their complaint to plead a new cause of action under N.Y. Labor Law § 240(1). The motion to amend is almost three years after the filing of the original complaint in this case and almost two years after the amended scheduling order. Plaintiffs' attorney does not offer any explanation for the delay, only that "[a]fter a review of the file, it was found that an amended complaint would be required in order to meet and serve the plaintiff's [sic] best interest" and that it would be a "grave injustice to the plaintiff [sic]" if the request to amend were denied. (Pls' Mem. at 2).

■ As noted above, if a lengthy delay exists before a motion to amend is made, it is incumbent upon the movant to offer a valid explanation for the delay. *Evans*, 704 F.2d at 47; *Greenberg*, 667 F.Supp. at 905. Plaintiffs have failed to meet this burden. The court notes that nothing new has come to light in between the time that the original complaint was filed and the time the motion to amend was made. Plaintiffs' attorney had all the information that was needed to bring a cause of action based upon N.Y.Labor Law § 240(1) in the original complaint or within a reasonable time thereafter. As noted earlier, when the only explanation provided is apparently ignorance of the law, as here, granting a motion to amend is inappropriate. *Goss*, 548 F.2d at 407.

■ Further, defendant submits that prejudice would result since defense strategies have been formed without consideration of N.Y.Labor Law § 240(1) and that the large

length of time would make changes in strategy difficult as well as require further discovery. Although the court can imagine more compelling reasons for prejudice, as noted earlier, " '[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.' " *Evans*, 704 F.2d at 47.

■ Finally, the court notes that the motion to amend would be futile in this case. N.Y.Labor Law § 240(1) imposes absolute liability on owners, contractors, and agents for failing to provide adequate safety devices. N.Y.Lab.Law § 240(1) (McKinney 1986).[1] The New York Court of Appeals explained the reach of the statute, stating:

> [S]ection 240(1) imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury. The duty imposed is 'nondelegable and ... an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control.'

*Gordon v. Eastern Ry. Supply Inc.*, 82 N.Y.2d 555, 559, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993) (quoting *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 513, 577 N.Y.S.2d 219, 583 N.E.2d 932 (1991)).

■ Actions brought under N.Y.Labor Law § 240(1) are designed to address injuries stemming from "special hazards." *Lawrence v. Finch Pruyn & Co., Inc.*, 891 F.Supp. 75 (N.D.N.Y.1995), *aff'd* mem. No. 95–9050 (2d Cir. Apr. 19, 1996) (citing *Rocovich*, 78 N.Y.2d at 509, 577 N.Y.S.2d 219, 583 N.E.2d 932). The Court of Appeals clarified what was meant by "special hazards" in the case of *Ross v. Curtis–Palmer Hydro–Elec. Co.* 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618 N.E.2d 82 (1993).

> The 'special hazards' to which we referred in *Rocovich*, however, do not encompass

---

1. Subdivision one states in part:
 All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the

> performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other devices which shall be so constructed, placed and operated so as to give proper protection to a person so employed.
>
> N.Y.Lab.Law § 240(1) (McKinney 1986).

*any and all* perils that may be connected in some tangential way with the effects of gravity. Rather, the 'special hazards' referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured. In other words, Labor Law § 240(1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder, or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person.*

*Id.* at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82 (emphasis in original).

 In the case at bar, plaintiff was laying sandbags at the bottom of a pipeline trench approximately five feet wide and ten feet deep. Another Southeast employee was standing on the edge of the trench and dropping fifty pound sandbags into the trench. Plaintiff was injured when the co-employee threw a sandbag which hit the plaintiff in the left knee. This injury is not of the sort which N.Y.Labor Law § 240(1) was designed to cover.

This court addressed a similar claim in *Lawrence*, 891 F.Supp. 75. In that case, a worker was hydroblasting "slag" which was built up on the inside of the walls of a paper mill fan unit.[2] Lawrence claimed that as he

was removing the slag from the walls of the fan unit, a large piece became dislodged above him and hit him forcing him to lose control of the hydroblaster which then passed across his foot and caused him injury. In reaching a conclusion in *Lawrence*, this court relied upon the Fourth Department case of *Staples v. Town of Amherst*, 146 A.D.2d 292, 540 N.Y.S.2d 926 (4th Dep't 1989), in which that court applied the "falling worker or object" test in dismissing a claim under Labor Law § 240(1).[3] In that case,

Staples, a laborer at a construction site owned by the defendant, was involved in the excavation beneath a street for the replacement of a sewer line. He and other workers were in the process of shoring up the walls of a ten to twelve foot deep trench when the walls caved in on them. The court, in finding summary judgment for the defendant, stated that liability under this section will only lie 'upon a showing that the injured worker fell from an elevated work surface or was struck by an object falling from an elevated work surface.'

*Lawrence*, 891 F.Supp. at 79 (quoting *Staples*, 146 A.D.2d at 293, 540 N.Y.S.2d 926).

In *Lawrence*, plaintiff's claim under 240(1) was dismissed on summary judgment on the grounds that the object (slag) did not fall from a work site and that the case did not

---

**2.** The No. 6 I.D. fan or induced draft fan, was deployed to protect a boiler which produced steam acid when operated. The fan pulled flue gases away from the boiler to prevent buildup of these toxic incendiary fumes. The fan's housing is a ten by twelve foot room with an eight foot ceiling that leads to a flue that runs approximately thirty feet upward to exhaust the fumes. As flue gases travel through the fan housing they cause a build-up on the walls of an ash deposit known as slag.

The hydroblaster used by Lawrence was basically a water hose with a two foot long nozzle or barrel at the end that emitted several tons of concentrated water pressure that would literally cut away the cement-hard slag from the walls of the fan. *Lawrence*, 891 F.Supp. at 77, n. 2.

**3.** The Fourth Department developed this test prior to the New York Court of Appeals decision in *Ross*. While the Third Department criticized the Fourth Department's application of the "falling worker or object" test when it decided *Ross* (*see Ross v. Curtis–Palmer Hydro–Elec. Co.*, 180

A.D.2d 385, 389, 585 N.Y.S.2d 516, 519 (3d Dep't 1992), it is apparent from the Court of Appeals language in *Ross* (the appeal of that Third Department case), that the test weathered the storm to remain valid law. *Compare Ross*, 81 N.Y.2d at 501, 601 N.Y.S.2d at 53, 618 N.E.2d at 86 ("Labor Law § 240(1) was designed to prevent those types of accidents in which the scaffold, hoist, stay ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person") *with Staples*, 146 A.D.2d at 296, 540 N.Y.S.2d at 929 (quoting *Siragusa v. State of New York*, 117 A.D.2d 986, 987, 499 N.Y.S.2d 533, 534 (4th Dep't), *leave denied* 68 N.Y.2d 602, 505 N.Y.S.2d 1026, 496 N.E.2d 239 (1986)) ("The statute is addressed to situations in which a worker is exposed to the risk of falling from an elevated work site or being hit by an object falling from an elevated work site.") *Lawrence*, 891 F.Supp. at 79, n. 6.

involve an "unsecured hoist, inadequate scaffold, stay, or ladder, or an object falling as a result of any elevated maneuver." *Lawrence*, 891 F.Supp. at 79 (citing *Ross*, 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82). The conclusions in both *Lawrence* and *Staples* lead this court to conclude that the same result would occur in the case at bar if the motion to amend were permitted. First, the object which allegedly struck Phaneuf did not drop or fall upon him, it was thrown. Second, there is no question that the injury is not one stemming from an "unsecured hoist, inadequate scaffold, stay, or ladder, or an object falling as a result of any elevated maneuver." *Lawrence*, 891 F.Supp. at 79 (citing *Ross*, 81 N.Y.2d at 501, 601 N.Y.S.2d 49, 618 N.E.2d 82).

Thus, the motion to amend the complaint to add a claim under N.Y.Labor Law § 240(1) must be denied on the grounds of unexplained undue delay and futility.

### B. *Request to Add Specific Industrial Code Violations Under 241(6)*

Plaintiffs' second plea to amend involves a request to add specific N.Y.C.R.R. Industrial Code Rule § 23 violations to the claim under N.Y.Labor Law § 241(6). This request undoubtedly stems from the New York State Court of Appeals decision which established that in order to prevail under N.Y.Labor Law § 241(6), violations of specific, rather than general Industrial Codes must be pled. *Ross*, 81 N.Y.2d at 502, 601 N.Y.S.2d 49, 618 N.E.2d 82. "[A]llegations ... which rely on claimed failures to measure up to ... general regulatory criteria as 'adequate,' 'effective,' and 'proper,' are not sufficient to give rise to a triable claim for damages under Labor Law § 241(6)." *Id.* Rather,

[f]or purposes of the nondelegable duty imposed by Labor Law § 241(6) and the regulations promulgated thereunder, a distinction must be drawn between provisions of the Industrial Code mandating compliance with concrete specifications and those that establish general safety standards by invoking ... '[g]eneral descriptive

terms'.... The former give rise to a non-delegable duty while the latter do not. *Id.*, at 505, 601 N.Y.S.2d 49, 618 N.E.2d 82.

This court notes that *Ross* was decided on June 10, 1993, two months prior to the filing of the complaint in this action and almost three years before the request to amend the complaint. Plaintiffs have not offered an explanation for the delay. As discussed earlier, when the only feasible explanation appears to be ignorance of the law, granting a motion to amend is inappropriate. *Goss*, 548 F.2d at 407.

Defendants again submit that they would be prejudiced should the court permit the plaintiffs to add specific violations under N.Y.Labor Law § 241(6). Defendants argue that the large amount of time between the filing of the original complaint and the current request to amend to add specific violations is prejudicial at this stage of the litigation since discovery has taken place and trial strategy has been formed. The court agrees. Once more, " '[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.' " *Evans*, 704 F.2d at 47.

Finally, the court notes that this motion to amend would also be futile in this case. As stated earlier, the *Ross* decision requires a plaintiff to allege violations of the Industrial Code which are extremely specific in nature rather than general safety standards in order to create a non-delegable duty on the part of a defendant. *Ross*, 81 N.Y.2d at 502, 601 N.Y.S.2d 49, 618 N.E.2d 82. Plaintiffs wish to add 12 N.Y.C.R.R. 23–1.5 entitled "General responsibility of employers." Clearly, this is not an Industrial Code which is specific under the meaning of *Ross*.

The other sections the plaintiffs wish to add are also futile. 12 N.Y.C.R.R. 23–1.7(a) entitled "Protection from general hazards—Overhead hazards" deals with setting up protection in areas "where persons are required to work or pass that is normally exposed to falling material or objects...." As discussed earlier, the circumstances surrounding the plaintiff's injury stem from an object which was being thrown, not falling as that section requires. Plaintiffs' attempt to utilize

12 N.Y.C.R.R. 23–4.1(a) and 23–4.1(b) are also ineffective. These sections deal with stability of a site which is being excavated which is also not at issue in this case. Finally, plaintiffs try to invoke 12 N.Y.C.R.R. 23–4.3 which addresses access to an excavation site, an issue which is also not applicable to the facts at bar.

██ Because the motion to amend the claim under N.Y.Labor Law 240(1) is both inexcusably delayed and futile, it must be denied.

### C. Requests to Modify Language and Separate Claims

 Plaintiffs also seek to amend the complaint to create four separate and distinct causes of action. This amendment would increase the damages sought from $650,000 to $2,150,000. First, the court notes that the decision of whether or not to permit the amendment of a damages clause is purely within the discretion of the court. *Crown Coat Front Co. v. U.S.*, 395 F.2d 160, 164–65 (2d Cir.1968). Second, as discussed in detail earlier, plaintiffs have had almost three years to file a request to amend the complaint and it would be prejudicial to the defendant to allow such an amendment this late in the progression of this case. Third, as noted above, the request to amend the complaint to include the cause of action involving N.Y.Labor Law § 240(1) will not be allowed and the cause of action involving and N.Y.Labor Law § 241(6) is weak at best and will most likely not survive summary judgment. Therefore, any attempt to amend the damages for these actions is futile. Finally, since the original complaint seeks $500,000 for the N.Y.Labor Law § 200(1) claim and $150,000 on behalf of Kathleen Phaneuf, the "amendment" would result in the same amount requested in the original complaint since the two other actions either are not going to be permitted or will not survive summary judgment. Thus, even if the court were to allow the separation claims and the increase in damages, the end result would be the same as the original complaint. Therefore, the request to amend the damages clause cannot be permitted.

Finally, the plaintiffs seek to amend the complaint by adding clarifying language to the complaint which would not only cover "agents of the defendant" but "laborer's at the site under the supervision and control of the defendant." Since this is merely an clarifying alteration and does not have a substantive effect on the complaint, the request is granted.

Accordingly, it is ORDERED that:

1. Plaintiffs' request to amend the complaint to add a cause of action under N.Y.Labor Law § 240(1) is DENIED;

2. Plaintiffs' request to amend the complaint to add specific N.Y.C.R.R Industrial Code Rule # 23 violations to supplement the existing cause of action under N.Y.Labor Law § 241(6) is DENIED;

3. Plaintiffs' request to amend the complaint to add clarifying language to the complaint which would not only cover "agents of the defendant" but "laborer's at the site under the supervision and control of the defendant;" is GRANTED; and

4. Plaintiffs' request to amend the complaint to designate the causes of action under N.Y.Labor Law §§ 241(6) and 200(1) as separate and distinct claims which would raise the plaintiffs' demand from $650,000 to $2,150,000 is DENIED.

The court will hear oral argument on the defendant's pending motion for summary judgment and the plaintiffs' pending cross-motion for summary judgment based upon the original complaint, other than the amendment permitted above, on September 13, 1996, in Utica, New York.

IT IS SO ORDERED.